## OYER AND TERMINER.

### THE PEOPLE agt. MARY HARTUNG.

The following irregularities in the deliberations of a jury in a case of *murder* were established: One of the jurors inquired of a constable in attendance, whether the jury could not bring in a verdict of manslaughter? Stating at the same time, that if they could do so, the whole jury would agree on such a verdict. Upon which, the constable in violation of his duty and oath, undertook to give his opinion. The Revised Statutes were subsequently sent for by the jury, and their provisions in relation to the crimes of murder and manslaughter, examined.

*Held*, that these irregularities of the jury would have been sufficient to vitiate the verdict, unless it had appeared beyond all reasonable doubt that no injury had resulted from it to the defendant.

It is well settled that the evidence of jurors is not allowed for the purpose of impeaching or in any way impairing the effect of their verdict. Much less are their unsworn and irresponsible statements as to the occurrences in the jury room to be allowed to be brought second hand before the court, in support of an application to set aside their verdict.

The practice of one or more constables being constantly present in the jury room, is not to be commended, but it seems there is no rule which prohibits it.

The defendant's counsel took the ground that under the circumstances of this case, the verdict of the jury was not, and could not have been the result of that calm deliberation and concurring judgment which alone could fitly characterize so momentous an act. The court on a review of the circumstances, thought otherwise, and denied the motion for a new trial.

*Albany Oyer and Terminer, March,* 1859.

MOTION by defendant for a new trial, on the ground of irregularity of the jury.

WM. J. HADLEY and ANDREW J. COLVIN, *for defendant.*
SAMUEL COURTNEY, *District Attorney, and* LYMAN TREMAIN, *Attorney-General, for the people.*

By the court—HARRIS, Justice. This application is founded upon irregularities which are alleged to have occurred in the jury room while the jurors were engaged in their deliberations.

But *one* of these irregularities is established by proof. It *does* appear that one of the jurors inquired of a constable who was in attendance, whether the jury could not bring in a verdict of manslaughter, stating at the same time, that if they could do so, the whole jury would agree on such a verdict. The constable, in violation of his duty as well as his oath, undertook to give his opinion. He said he thought they could, but added, that they had better consult their foreman, who *being a justice of the peace*, would probably know. The Revised Statutes were subsequently sent for by the jury, and their provisions in relation to the crimes of murder and manslaughter examined.

This proceeding on the part of the jury was a reprehensible irregularity, and is sufficient to vitiate the verdict, unless it appears beyond all reasonable doubt, that no injury has resulted from it to the defendant. It is necessary, therefore, to consider this question. After the jury had thus endeavored to ascertain for themselves whether they could find the defendant guilty of manslaughter, they came into court and stated they all agreed that the defendant was guilty to *some extent*, but were divided in opinion as to *the degree* of her guilt. They then inquired of the court whether they could render any other verdict than that of guilty or not guilty of the crime charged? They were instructed that a verdict of manslaughter would not be sustained by the evidence, and that guilty or not guilty of the crime charged, was the only verdict which they could appropriately render. Under these circumstances, it cannot be possible that the defendant was in any way prejudiced by the attempt of the jury to ascertain by consulting the Revised Statutes, whether they could not convict her of a minor offence. It is very certain, I think, that the verdict has not been affected in the least degree by the impropriety of the jury in seeking to inform themselves as to the law.

The other charges of misconduct, some of which if established, would be quite sufficient to avoid the verdict, are entirely unproved. These charges rest upon the affidavit of the defendant's counsel who do not profess to have any knowledge

The People agt. Hartung.

on the subject themselves, but make their statements upon their information and belief. Nor do they give the sources of such information. From the character of the charges, however, it may be inferred that it was derived from some one or more of the jurors themselves. The constables who were in attendance upon the jury, have each so far as they could, denied the truth of these charges.

No rule of law is better settled than that the evidence of jurors is not to be allowed for the purpose of impeaching or in any way impairing the effect of their verdict. The doctrine has long been established in England. It has been maintained with singular steadiness and unanimity in the United States—with the exception of Tennessee, where following an early precedent, its courts have somewhat modified the rule. There is not I think, another state in which the rule has not been asserted and enforced. Even in Tennessee, where the affidavits of jurors have sometimes been received to prove facts which tended to vitiate their verdict, the courts have repeatedly declared that the practice was dangerous and ought not to be extended a single step beyond what it had already attained.

But aside from all adjudication, the doctrine rests upon the clearest principles of public policy. It is infinitely better that the irregularities which undoubtedly sometimes occur in the jury room, should be tolerated, rather than to throw open the doors and allow every disappointed party to penetrate into its secrets. The most enlightened jurists have united in deprecating the mischiefs which would flow from such a license. Nothing would be more sure to detract from the confidence or weaken the security which the community now feel in this justly cherished mode of trial. If this sanctuary were to be thrown wide open and an inquisition held upon the conduct of jurors and the reasons upon which individually their verdict was founded, the trial by jury now held in such sacred regard, could not long survive the dishonor to which it would inevitably be exposed.

But if jurors should not be allowed to give evidence to destroy their own verdict, how much more objectionable it would

be to allow them to expose the occurrences of the jury room and allow their unsworn and irresponsible statements to be brought second hand before the court, in support of an application to set aside their verdict. It is impossible to give the least effect to such statements without a fearful departure from the very first principles of evidence.

A point was made by the defendant's counsel, though it was not much pressed upon the argument, that the constables sworn to attend the jury, were one or more of them constantly present in the jury room. The practice is not in my judgment to be commended, and yet it is almost if not quite universal, and I know of no rule which prohibits it. Few verdicts could stand, if this were a ground of impeachment.

The only other ground urged by the defendant's counsel in support of their application is, that the verdict is not and could not have been the result of that calm deliberation and concurring judgment which alone could fitly characterize so momentous an act. I have not thus regarded the action of the jury. From the commencement of the trial until their verdict was pronounced, I believe the jury were fully impressed with the solemnity of their duty. Certainly I have seen no evidence to the contrary.

It is true, that after they had been engaged in their deliberations *forty-eight* hours, they declared themselves unable to agree upon a verdict, and yet in a very minutes after, they rendered their verdict of guilty. To me, however, in view of all the circumstances, this fact does not seem surprising. The defence was presented with a degree of zeal and professional skill unsurpassed, if not unequalled in my experience of criminal trials. To all who witnessed the trial, its effect was manifest. It was felt by all. It awakened not only in the jury, but in all who took part in the trial, an active sympathy for the defendant. The press of the city and the community generally, manifested a kindred feeling. It was under these circumstances and such influences, that the jury retired to deliberate upon their verdict.

The theory of the defence had been, that but one person was

The People agt. Hartung.

guilty of the crime as principal, and that the defendant was not that person. It is evident from the communications received from the jury during the progress of their deliberations, that much of their time was occupied with the consideration of the question whether the defendant or the other person whose name was associated with that of the defendant in the testimony, was most guilty. No juror seems at any time to have thought the defendant innocent. The question upon which they were divided in opinion was, which of the two persons implicated in the transaction was *most* guilty ? Thus, in the communication made to the judge by one of the jurors on Sunday evening, it is asked whether, " if the jury, after the most careful and laborious investigation, are absolutely unable to find which of the inculpated parties is *most guilty*, a verdict of *not guilty* could be rendered ?" The communication made to the court on Monday morning, indicates a similar division of opinion among the jury. When, in consequence of the instructions they then received, the jury found themselves restricted to the single question whether the defendant was guilty or innocent of the crime charged, without reference to the guilt or innocence of any other person, their previous deliberations had prepared them to answer the question. Their work was done, and they at once and unanimously said, she is not innocent—she is guilty. The verdict was clearly warranted by the testimony. The defendant had herself procured the poison. She procured it too in a manner and under circumstances tending strongly to prove a guilty purpose. It was in her own hands on Sunday evening. On Tuesday, it was hastening to perform its deadly work. It is *possible* that the poison passed from the hand of the defendant to *another hand*, by which it was administered to the deceased. But the testimony reveals no such hand. And even if it were conceded that another participated in the crime, the circumstances are such as scarcely to warrant the jury in exonerating the defendant from guilt.

Having thus considered all the grounds presented by the defendant's counsel in support of their application, and as I

trust, with an anxious desire that no injustice should be done to the defendant, the conclusion to which I have been led is, that the court is not at liberty to interfere with the verdict.

The motion for a new trial must, therefore, be denied.