By the Court.—Sheldon, J.
[That portion of the opinion relating to the questions raised by the bill of exceptions, which was afterward carried before the court of appeals, is omitted.]
The motion which had- been made for a new trial, upon affidavits, on account of alleged irregularities, has been considered with all the solicitude its importance demands. It appears that" the case was given to the jury in the evening and that they remained out until the next day, in the" afternoon, before agreeing upon a verdict.
In the morning of the second day, one of the jurors requested the officer in charge to procure a morning paper, which he did, and it was read in the jury room by the jurors or some of them. It is claimed that this paper contained a report of a portion of the proceedings upon the trial; but the affidavits opposed tend to establish that in fact it was not a copy of the same paper which it is alleged by the prisoner was before the jury.
It appears, also, that while engaged in their deliberations, the jury became possessed of a copy of the Revised Statutes, in which the offenses of murder and manslaughter were declared, the book being properly in the room where they were confined; and that they, or some of them, read' the law respecting these offenses. *38 Subsequently they came- into the court room and desired further explanation from the court concerning the law, and were fully and explicitly advised concerning those crimes and the degrees thereof, and retired for deliberation, finally rendering their verdict.
This application is an appeal to the judicial discretion of the court; and however reprehensible may have been the conduct of the jurors or of the officers, the court is to see on the one hand whether by any possibility the prisoner-could be prejudiced by the matters stated, and on the other, that justice shall not be defeated by the mere suspicion that his case had been improperly influenced. A new trial is not to be granted for every irregularity in the conduct of a jury, else, there would be no end of judicial investigation, and any corrupt juror might, through some intentional misbehavior, however slight, lay the foundation for such a motion; although there be not the slightest pretence that the verdict was influenced thereby. The question is, was the conduct of the jury incompatible with the just, full and thorough performance of their duty; and if it was, and its tendency be to defeat justice, and there is the least likelihood that such was its effect, it affords good ground for setting aside the verdict, so that the confidence of the public in the administration of justice may not be impaired (2 Grah. & W. on New Tr., 480).
Upon application to the court for a new trial on account of the reading of the newspaper the inquiry will always be, whether an improper influence, through such a medium, has been brought to bear upon the jury. The affidavits in support of the motion allege that it was a paper containing a portion of the testimony and a brief statement of the arguments' of the respective counsel, add. it is not denied but what the report of the evidence is correct. The affidavits opposed show almost conclusively that it was another *39 newspaper, but whether it contained any reference to the case does not appear. It is certain, however, that the newspaper produced in support of the motion contained no comments upon the case, no observations as to the prisoner’s character, or the probable guilt or innocence of the accused. Had there been any of an unfavorable nature, they would have been calculated directly to prejudice the result; but as it was but a repetition of what the jury had already heard, it could have no effect on them whatever (2 Grah. & W. on New Tr., 484).
The supreme court of the United States considered the precise question in the case of the United States v. Reid, 12 How., 361. While the prisoner was on trial for murder on the high seas, a newspaper containing a report of the evidence came ipto the hands of a juror, a part of which he read, and when in the jury room, deliberating upon the verdict, he read over the whole. Another juror read a few sentences of the report while he was in the jury box, but both deposed that it had not the slightest influence on their verdict. Chief Justice Taney held, that the facts proved-by the jurors, if proved by unquestioned testimony would be no ground for a new trial, and he said there was nothing in the newspaper calculated to influence that decision, and both of them swear that the paper had not the slightest influence on their verdict.
In this case, every juror testified that the contents of the paper had no influence upon their verdict; and, indeed, it appears that the only object of procuring the paper was to obtain the current news of the day.
The opinion of Justice Stoby in the case of the United States v. Gilbert, 2 Sumn., 19, contains a valuable exposition of the law in such a case. The motion for a new trial was, among other things, founded upon the fact that during the trial for piracy on the high seas, the jury were allowed to read newspapers from *40 which all reference to the trial had been expunged by the officers, and he declared that “without doubt it was a great irregularity in the officers of the court, for which they nmy be punishable to have granted this indulgence. But it is not every irregularity of officers which would justify a court in setting a,side a verdict and granting a new trial or treating the matter as a mistrial. The court must clearly see that it is an irregularity which goes to the merits of the ferial or justly leads to the suspicion of improper influence or effect on the conduct or acts of juries. We must take things as they are in our days. Juries cannot now, as in former ages, be kept in capital cases upon bread and water, and shut up in a sort of gloomy imprisonment, with nothing to occupy their thoughts. It would probably be most disastrous to the' administration of justice, and especially to prisoners, to attempt, in these days, the enforcement of such rigid severities so repugnant to all the usual habits of life.”
We have examined all the affidavits and allegations concerning the irregularity complained of, and, without expressing any opinion as to the propriety of the introduction of any of them upon this motion, are of the opinion that the verdict could not have been in any manner affected by the irregularity, or that it has been in the slightest manner prejudicial to the prisoner. A conviction wiE not be set aside and a new trial granted when it is apparent that no injury has, resulted to the prisoner from the alleged irregularity. ¡Neither justice nor a proper exercise of humanity, .even in a capital case, demands such a determination (Willis v. People, 5 Park. Cr., 647). In People v. Ransom, 7 Wend., 414, Justice Sutherland says : “The conclusion from these cases appears to me to be this: that any mere informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jury themselves, will not be sufficient ground for setting *41 aside a verdict, either in a criminal or civil case, where the court are satisfied that the party complaining has not or could not have sustained any injury from it (see, also, People v. Hartung, 17 How. Pr., 85; People v. Carnal, 1 Park. Cr., 256; Taylor v. Everett, 2 How. Pr., 23; Baker v. Simmons, 29 Barb., 128).
The other allegation of irregularity is predicated upon the fact that the jury had the volume of the Revised Statutes declaring the offenses of murder and manslaughter before them during their deliberations. It was not given to them by consent, nor was it obtained by any connivance of the officers or of the prisoner, but, it would appear, accidentally, as the volume, with others, was in the room for the use of the board of supervisors. The jurors all testify that its perusal had no effect upon their verdict; but whether their affidavits are proper or not to be considered and relied upon in support of this position, it appears that they were subsequently instructed by the court fully upon the law applicable to the case. A decision upon this question must be in conformity to the general rules and principles which have been heretofore stated, in considering the other branch of the case. The case of Wilson v. People, 4 Park. Cr., 619, 632, seems to be so analogous to this in its facts, and so well considered on principle, that it may well serve as a guide in the decision of this case. In that case, the jurors sought for the same information which, in all probability, was obtained in this case from the book, and a constable procured it for them. But afterwards the jury came into court and received clear and explicit instructions, as in this case, upon which they acted, and returned their verdict of guilty. The act was characterized by the court as an irregularity, but at the same time the court said it could not see how it was possible that the verdict rendered was in any way produced by the information. It would seem that in that case the jury ren *42 dered the only verdict they could under the charge of the court; unquestionably a conscientious verdict, but as the court did not distinctly submit the question of intent to the jury, a new trial was granted. In the case we are considering the judge charged the jury that if the prisoner perpetrated the homicide charged in the indictment, and perpetrated it from a premeditated design to effect the death of the deceased, he was guilty of murder in the first degree, but if they found that he perpetrated the homicide in the heat of passion,' without a design to effect death and with a dangerous weapon, he was guilty of manslaughter in the third degree, and, further, that if they were not satisfied upon the evidence, and satisfied beyond a reasonable doubt, that the prisoner was guilty of murder in the first degree or manslaughter in the third degree, it was their duty to acquit the prisoner. All concur that this charge contained the exact propositions which the law requires in such a case to be submitted to the jury. When explained and commented upon by an enlightened tribunal to the jury, we must assume that they understood and appreciated the meaning and significance of the rules embodied in those few words, so full of vigilant regard for the protection of all society, so full of humanity and charity for the offender.
I cannot entertain a doubt but that the jury acted entirely upon the directions and information derived from the court, nor can I, after the most anxious deliberation impressed by the solemnity of the case and patiently seeking for all guides to enable me to arrive at a correct and humane decision, discover that-the verdict could have been in any possibility or probability influenced by any alleged irregularity. I am satisfied' that the prisoner had a fair and impartial trial as provided by the laws of the land, and that is as far as the legitimate power of this tribunal to inquire extends. *43 With a verdict of a jury, rendered after such a trial, the court is compelled by law to be satisfied, for it has no more power than the humblest citizen to arrest it or its consequences. If the jurors believed the competent, legal and sufficient evidence introduced by the people, they were not only justified in every view in their verdict, but could render no other without a violation of their oaths. . Their decision is entitled by law to the respect and confidence of the community, and to that decision, all who live within the pale of our civilization and avail themselves of the benefits of our organized society, must yield obedience.
Clinton, J., concurred.
Motion for new trial denied.
The prisoner brought error to the court of appeals, where the conviction was affirmed in December, 1872. That court, in an opinion by Andrews, J., said that they could not review the motion on the questions above discussed, but that they had looked into the affidavits, and agreed with the above opinion.