## THE STATE OF IOWA V. BALDY.

1. Indictment: NAME OF OFFENSE. An indictment which contains a statement of the facts constituting an offense, is sufficient though it does not set out the technical name thereof.

2. Change of venue: DISCRETION. The change of venue is left to the sound legal discretion of the District Court, and the Supreme Court will interfere with its rulings on such applications only when it is made manifest that such discretion has been abused.

3. New trial: MISCONDUCT OF JURY. When a juror, after retiring to consider upon the verdict, left the jury room in charge of the sheriff and went to a grocery store, where he procured and drank a glass of ale or lager beer, after which he returned to the jury room and participated in finding the verdict: *Held*, that misconduct of the juror constituted sufficient ground to set the verdict aside and grant a new trial.

4. Adultery: PROSECUTION FOR. Under section 4347 of the Revision of 1860, a prosecution for adultery *commenced* by the husband or wife may be continued without further co-operation on their part.

*Appeal from Tama District Court.*

### WEDNESDAY, JUNE 29.

THIS is a prosecution for adultery. The defendant was found guilty by a jury, and after judgment and sentence by the District Court, having secured record the matters which he assigns as error, prosecutes this appeal. The further necessary facts are stated in the opinion.

*J. D. Templin* and *W. H. Stivers* for the appellant.

*C. C. Nourse*, Attorney-General, for the State.

COLE, J. — The indictment does not contain the name of the offense, but does contain a statement of the facts
1. INDICT-MENT: name of offense. constituting the offense of adultery, in ordinary and concise language, and further avers that it was found on the complaint of Asenath Baldy, the lawful wife of the defendant.

The defendant demurred to the indictment, because it did not name the offense, that it was uncertain as to the crime charged, did not show that the wife was alive when the offense was committed, and did not, also, accuse the other party to the crime. This demurrer was overruled, and the decision of the court thereon is assigned as the first error. While as a matter of form it may be the better practice to name the offense in the indictment, a failure to do so will not render it vulnerable to a demurrer or other objection. A fair construction of the Revision, §§ 4650, 4651, 4659, subdivision 5, § 4660, subdivision 4, and § 5111 shows beyond controversy that such objection certainly cannot be made available on appeal. (*The State* v. *Hessenkamp, ante*, 25.) All the other grounds of demurrer have no foundation in fact, in this case, except the last, and that is entirely immaterial.

II. The defendant applied for a change of venue, on the ground of excitement and prejudice against him in that 2. CHANGE county, and supported his application by his own OF VENUE: discretion. affidavit and that of three other persons. It was resisted by the counter affidavits of eighteen persons, and was overruled by the court, and the same is now assigned as error.

By express statute the granting or refusing an application for change of venue, is a matter of sound legal discretion with the District Court, and unless that discretion is exercised clearly in violation of the very right of the matter, this court will not disturb the decision. (*The State* v. *Nash and Redout*, 7 Iowa, 347; *The State* v. *Mooney*, 10 Iowa, 506; *The State* v. *Arnold*, 12 Iowa, 479; *The State* v. *Ingalls, ante*, 8.)

III. It is next assigned as error, that the court erred in refusing the seven instructions asked by defendant. Without taking the time which would be necessary to review each instruction and show wherein it was stated with

equal correctness and force for defendant in the instructions given by the court, or as is the case with one or two of them, without any evidence upon which to base them, we remark, that after carefully comparing them with those given by the court, and with the evidence, we find them either without foundation in the evidence or very perspicuously embraced in the instructions given by the court to the jury, and therefore it was not error to refuse them.

3. NEW TRIAL: misconduct of jury.    IV. After the jury had retired in charge of the bailiff, two of them, each separately at different times, were permitted to separate from the balance of the jury, and during their absence from the jury room, which was for a necessary purpose, one of such jurors went to a grocery store to purchase some tobacco, and while there procured and drank a glass of ale or lager bier, and then returned with the bailiff in whose charge he had been while absent, to the jury room. The affidavits are conflicting as to whether the juror conversed with other persons at the grocery, or not, but there is no conflict that he was absent from his fellow jurors and drank spirituous drink while absent.

There are one or more affidavits that the juror advised other persons of the state of deliberation, and how the jury stood, and that the bailiff also did the same, but this is not free from doubt.

At the common law the jury were kept together without meat, drink, fire, or candle, unless by permission of the judge, till they agreed. 3 Bl. Com., 375. This rule has been so far modified in this country that the jury may of course, and without any special permission of the judge, have water, fire, and lights, but the permission of the judge is requisite for meat or board.

But at no time has it ever been claimed that even with the permission of the judge, could the jury have spirituous liquors, or that which at one time was regarded as an

almost national if not necessary drink, cider; now, so happily, in view of its stimulating an appetite for still stronger and spirituous liquors, gone into comparative disuse.

It has been held by the courts in this country, that the use of spirituous liquors by a juror, even with the consent of the parties, will vitiate the verdict.

In *Brant* v. *Fowler*, 7 Cow., 562, after the judge had concluded his charge, several of the jurors wishing to go out were told by the judge they could go, accompanied by an officer.

One of them being indisposed from diarrhœa, separated himself from the officer and drank about one-third of a gill of brandy to check his disease, but it was shown that the juror finding the others in due season for deliberation, conducted himself with great propriety, was chosen foreman, and delivered the verdict. The whole court say: "We cannot allow jurors thus of their own head to drink spirituous liquor while engaged in the course of a cause. We are satisfied that here has been no mischief; but the rule is absolute and does not meddle with consequences, nor should exceptions be multiplied. We have set aside verdicts on error for this cause, even where the parties consented that the jury should drink. *The People* v. *Douglass*, (4th Cow., 26), though a criminal case is in point, for the principle of this motion, which must be granted."

We should hesitate long before declaring in any case where a juror indulges in the use of intoxicating liquors, without medical prescription and leave of court, during retirement, that "we are satisfied no mischief has resulted," but fully indorse the balance of what is said by the court. Section 5111 of the Revision, provides in substance that no judgment shall be reversed except for error or irregularity which has resulted to the actual prejudice of the party complaining, and it may be claimed that no such preju-

dice is shown in this case, as resulting from the drinking by the juror.

The parties have a clear right to the cool, dispassionate and unbiased judgment of each juror applied to the determination of the issues in the cause, and the use in any degree of that which stimulates the passions and has a tendency to lessen the soundness of judgment, is itself conclusive evidence that the party who has the right to the exercise of that dispassionate judgment, has been prejudiced in not having it as perfect as it existed in the juror when accepted, applied to the determination of the cause. If this is true as a general rule, and as applicable to civil cases, *a fortiori* is the rule applicable in criminal cases, and especially in this case in which the offense charged involves obedience to passions stimulated more than others by the use of spirituous liquors, and of course in its correct determination requiring the most careful guarding against undue influence from them.

V. It is also claimed that the verdict is against the weight of evidence; since the judgment must be reversed for the reason last stated, it becomes unnecessary to pass upon this point.

VI. Asenath Baldy, the wife of the defendant, appeared **4. ADULTE-** before the grand jury at the time the indictment **RY: prose- cution for.** was found, and was the first witness examined by them, and she testified to certain facts tending to show the guilt of the defendant.

But she was not examined and did not appear as a witness on the trial of the defendant in the District Court. It is now assigned as error, that the court proceeded with the trial of the cause, when the wife did not appear to prosecute it. It is provided by § 4347 of the Revision, that "no prosecution for adultery can be commenced, but on the complaint of the husband or wife. This statute does not require that the husband or wife shall continue to

prosecute to conviction, but it is sufficient if the prosecution is commenced on their complaint. After it is thus *commenced*, it may be continued without further co-operation on their part. As it appears that this prosecution was commenced on the complaint of the wife, it was not error to continue the prosecution to final determination, even without her presence or consent.

For the misconduct of the juror as stated, the judgment is reversed, and cause remanded for a new trial.

Reversed.