RYAN *et al.* v. HARROW *et al.*

Jury and verdict: DRINKING INTOXICATING LIQUOR BY JURORS: NEW TRIAL. The drinking of intoxicating liquor by one or more of the jurors during the discharge of their duty as such, constitutes sufficient ground for setting aside the verdict, and ordering a new trial. *The State* v. *Baldy,* 17 Iowa, 39, approved; and the decisions in other States, bearing upon the question, collated by BECK, J.

*Appeal from Lucas District Court.*

FRIDAY, OCTOBER 8.

ACTION of replevin, verdict and judgment for defendants. Plaintiff moved the court to set aside the verdict, and for a new trial, on the ground of the misconduct of the jury, alleging that certain of the jury drank intoxicating liquors, and were intoxicated while deliberating upon their verdict. And on the further ground of newly discovered evidence, being the declarations and admissions of one of the defendants as to certain material facts, made after the cause was submitted to the jury. Affidavits in support and denial of the facts alleged as the grounds of a new trial were filed by the parties, and the motion was submitted thereon to the court, and was overruled. Plaintiffs appeal.

*E. M. Thorp, Thos. F. Withrow* and *J. H. Penney* for the appellants.

*H. H. Trimble* and *Perry & Townsend* for the appellees.

BECK, J.—The fact that, during the progress of the trial, and after the cause was submitted to the jury, and JURY AND VER- before they had agreed upon their verdict, DICT: drinking intoxicating two or more of the jury drank intoxicating liquors: new trial. liquors, seems to be conclusively established by the evidence embodied in the record. The liquors appear to have been procured by the jury without the knowledge or aid of any of the parties, none of whom are blamable for this misconduct of the jury in this respect. Whether any of the jury were intoxicated is a question of doubt: several of the jurors, and the bailiff attending them, giving it as their opinion that one or two were under the influence of intoxicating liquors, while the persons thus charged, and several others, deny the fact. The view we take of the case will relieve us of the duty of determining whether the charge of intoxication is sustained by the record. And we are glad to escape so unpleasant an investigation, which might result in convincing us that the administration of the law in our State has been disgraced by the drunkenness of those appointed to decide, in a court of justice, upon the rights of their fellow-citizens. We had hoped that such things were of the past, and would only be remembered as rare instances existing in the traditions of frontier days.

This court has ruled that a juror, separating from his fellows while considering of their verdict, and drinking ale or lager beer, without the charge that he become intoxicated, is misconduct requiring the verdict to be set aside. *State* v. *Baldy*, 17 Iowa, 39. The ruling of the court is based upon the fact of the drinking of the liquor by the juror, and no weight seems to be given to the fact of separation without permission. The authorities cited in support of this decision are *Brant* v. *Fowler*, 7 Cowen, 562, and *The People* v. *Douglass*, 4 Cowen, 26, which are directly in point, and fully sustain the doctrine

adopted by. this court.   It is urged that these cases, were at the time of the decision of this court in *The State* v. *Baldy*, overruled by *Wilson* v. *Abrahams*, 1 Hill, 207, and the following cases, holding a contrary doctrine, are cited : *The State* v. *Sparrow*, 3 Murph. 487 ; *Pope & Jacobs* v. *State*, 36 Miss. 121 ; *Gilmanton* v. *Ham*, 38 N. H. 108 ; *Commonwealth* v. *Roby*, 12 Pick. 496.   *Wilson* v. *Abrahams*, it may be admitted, does overrule *Brant* v. *Fowler* and *The People* v. *Douglass*.   The other cases cited by defendants' counsel hardly go to the length and in the direction claimed for them.   In *The State* v. *Sparrow*, refreshments, consisting of victuals and coffee, were handed into the jury room, and a vessel was found there containing some wine.   There was no charge of intoxication as to any of the jury.   In *Pope & Jacobs* v. *State*, at the suggestion of a fellow-juror, who was a physician, one of the jurors who was sick drank brandy, handed into the room for that purpose.   No other juror drank of it.   The court say : " If indeed the evidence closed with the proof of the naked fact that ardent spirits in quantities sufficient· to produce intoxication were conveyed by the officer into the jury room, we should feel no hesitation in holding that the conviction should be set aside."   In *Gilmanton* v. *Ham*, one of the jurors took a small potion of brandy for sickness under which he was really suffering.   It had been previously prescribed by his physician.   The verdicts were sustained in all these cases.   In *The Commonwealth* v. *Roby*, the jury were furnished crackers, cheese and cider ; no improper conduct charged, or allegation that any one of the jury was intoxicated.   The verdict was not set aside.   Chief Justice SHAW, after examining the authorities· touching the duty of the court in case of such misconduct of the jury, as the result of his observations, makes these remarks : " The result of the authorities is, that when there is an

irregularity, which may affect the impartiality of the proceeding, as when meat or drink or other refreshments have been furnished by a party, or when the jury have been exposed to the effects of such influence, as when they have improperly separated themselves, or have had communication not authorized, then, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly and may have been corruptly done; or when the irregularity consists in doing *that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment, as when ardent spirits are introduced,* then it would be proper to set aside the verdict, because no reliance can be placed upon its purity or correctness."

The following cases, not cited by defendants' counsel, favor a doctrine contrary to that recognized in *The State* v. *Baldy. Davis* v. *The People*, 19 Ill. 74. The question is not discussed and no authorities are cited; it is disposed of in less than four lines, and the conduct of the officer in permitting the jury to drink intoxicating liquors pronounced very culpable, and it is said would have been properly punished by the court. *Rowe* v. *The State*, 11 Hump. 496. The jury partook of intoxicating liquors during the trial, but not so as to disqualify them for a proper performance of their duty. In *Stone* v. *The State* (4 Hump. 27), while the trial was in progress, the jury drank ardent spirits at their meals. There was no proof that they were disqualified thereby from duly considering the case. Thompson's Case, 8 Gratt. 637. Between the adjournment of the court in the evening and its meeting in the morning, the jury drank spirituous liquors "in moderation" in the presence of the sheriff, upon the invitation, as a mere " act of courtesy," of a witness for the Commonwealth. In *Richardson* v. *Jones* (1 Mo. 405), the

jury had in their possession and drank intoxicating liquor while considering their verdict.

In *Purinton* v. *Humphries* (6 Greenl. 379), refreshments with ardent spirits were furnished the jury, but it is not intimated that any one of them were in the least degree intoxicated.

In *U. S.* v. *Gilbert* (2 Sumner, 19), some of the jury drank ardent spirits during the trial, the prisoner's counsel consenting in open court that those whose health might require it should have this indulgence. See also *Coleman . Moody*, 4 Henning and Mumford, 1, and *State* v. *Upton*, 20, Mo. 397. In all these cases the verdicts were sustained.

In support of the doctrine of *The State* v. *Baldy*, the following cases may be cited in addition to those referred to in the opinion in that case : *Leighton* v. *Sargent*, 11 Foster, 119; *State* v. *Bullard*, 16 N. H. 139; *Jones* v. *The State*, 13 Texas, 138 ; *Pelham* v. *Page*, 1 Eng. 535 ; *Grigg* v. *McDaniel*, 4 Harring, 367.

In *Leighton* v. *Sargent*, brandy, furnished by the attending officer, was drank by a juror complaining of illness. The quantity drank was small, and no suspicion was entertained of the intoxication of the juror. In *State* v. *Bullard*, it is not stated that the jurors were intoxicated or under the influence of the liquor they drank ; so in *Jones* v. *The State*, and in *Grigg* v. *McDaniel*. In *Pelham* v. *Page* a portion of the jurors were intoxicated, but the court stated that the circulation of spirituous liquors among the jury, without proof of intoxication, while sitting in the trial of the case, even with consent of the parties, is good cause for setting aside the verdict. In all these cases the verdicts were set aside.

In *Hogshead* v. *The State* (6 Hump. 39), a juror who had appeared dull and abstracted during the progress of the trial, when he had retired with his fellows to consider

of their verdict, was threatened with *delirium tremens.* His physician testified from his knowledge of the man, obtained in attendance upon him in attacks of like character, that he could not have understood intelligently the facts of the case. The juror, after taking a draught of spirits and breakfast, " seemed pretty well." A new trial was ordered.

In *The State* v. *Prescott* (7 N. H. 296), a juror went to the bar and drank gin. There were other irregularities on the part of the juror, but this is dwelt upon, though it is not intimated that the juror was under the influence of liquor.

The verdict was set aside, but the question, whether the drinking of intoxicating liquor by a juror while considering the verdict, is alone such misconduct as will require a new trial to be granted, is expressly waived.

In New York, the rule adopted by this court in *The State* v. *Baldy* seems to have been the received doctrine until *Wilson* v. *Abrahams,* 1 Hill, 207. That case overrules not only *Brant* v. *Fowler* (7 Cow. 562), and *The People* v. *Douglass* (4 id. 26), but also two other prior cases which recognize the rule, viz. : *Bullard* v. *Spoor* (2 Cow. 430), and *Rose* v. *Smith* (4 id. 17). Prior to any of these cases, however, it had been held, in the same State, that a verdict would not be set aside because, during a suspension of proceedings in a cause, the jurors drank spirituous liquors furnished by both parties in the cause. *Dennison* v. *Collins,* 1 Cow. 111.

The foregoing are all the cases that have fallen under our notice, which serve to elucidate the question under consideration. It must be admitted that they are very far from agreement, and cannot be reconciled. It may be said, however, that all admit that the drinking of intoxicating liquors by jurors, while in the discharge of their duties as such, is a very dangerous practice, that

ought to be discouraged; it is uniformly condemned. All unite in holding, too, that, if it appear that a juror was under the influence of spirituous liquor while sitting in the case, the verdict cannot be sustained. The rule which this court adopted in *The State* v. *Baldy* is supported by reason, and will certainly tend to insure purity and correctness in the verdicts of juries, by removing the possibility of the effects of excessive indulgence in intoxicating drinks, admitted on all hands to be dangerous and evil. There is absolute safety in the rule, there is admitted danger without it. Prudence, and a desire to secure a pure administration of the law, demand that we adhere to it. It is in harmony with other rules intended to secure unbiased and dispassionate verdicts of juries, and is supported by precisely the same reasons.

If a juror has communications in regard to the cause with a party or an attorney therein; if he receives refreshments from a party to the suit, or is exposed to other temptations that might operate upon him to corrupt his verdict, the courts will not enter into an inquiry in order to determine whether indeed such was the result, but, in the fear of possible improper influences wrought thereby, will set aside the verdict. In such cases jurors of ordinary intelligence and integrity would not be influenced by these things, but the courts hold it far safer, and as more certainly conducing to the correct administration of justice, to remove temptation entirely out of the reach of jurors, than to weigh the temptations to which they may be exposed, and their ability to resist them, and thereupon to determine whether in fact the pure fountain of justice has been corrupted. Doubtless ardent spirits, to a certain amount, may be drank without inflaming the passions or beclouding the reason, but, beyond a certain limit, they indisputably produce these results. Where that limit is with different men cannot be certainly known.

Courts will not assume to determine the limit, and whether, in cases where jurors have indulged in the use of the dangerous liquid, it has been passed. Inasmuch as, in such a case, there can be no certainty of the purity and correctness of the verdict, that it is the result of cool and dispassionate deliberation and the honest exercise of reason, it will be set aside. In the business affairs of the country these very reasons often constrain those who employ men to discharge duties requiring coolness, deliberation and the calm exercise of judgment for their performance with safety to life and property, to impose strict abstinence from intoxicating beverages upon those so employed. Engineers upon railroad locomotives, pilots upon steamboats, etc., etc., are often the subjects of such restrictions, not because indulgence in intoxicating liquors, within the very indefinite bounds of what is called moderation, would absolutely unfit them for the careful discharge of their duties, but because there is absolute certainty of perfect safety from the maddening influence of alcohol in entire abstinence from the use of all the liquors in which it exists, and without such abstinence there can be no such safety.

BRONSON, J., in *Wilson* v. *Abrahams* (1 Hill, 207), uses the following language: "If one of the jurors drank a glass of spirituous liquor while absent from court, I cannot think it a sufficient ground for setting aside the verdict, unless there is some reason to suppose that the juror drank to excess, or at the expense of, or on the invitation of, one of the parties. I agree that it would be well that all men should abstain from the using intoxicating drinks, but until that sentiment becomes nearly or quite universal, I think it should not be imposed as a law upon a juror in those cases where he is permitted, for a night or an hour, to go wheresoever he pleases, without being attended by an officer. * *

"When there is reason to suspect that he has drank so much, at his own expense, as to unfit him for the proper discharge of his duty, the verdict ought not to stand."

These views ignore the very reasons of the rule which they attack, and put out of sight the acknowledged fact that it is the only certain escape from danger to the purity of the verdict, from the use of intoxicating drinks. They require the court to determine the fact that these drinks have not been used to excess, from which expression, we infer, is meant to an extent that would not affect the mind and passions — a most difficult task, that might well puzzle a physiologist.

The just administration of the law ought not to rest on such uncertainties. The mere act of drinking at the expense of a party is given as a reason for setting aside the verdict. Yet the practical experience of all men teaches that, ordinarily, the danger of improper influences over the juror from drinking at the expense of a party to the the suit, would not be as great as the danger of arousing his passions and beclouding his judgment by the drinking itself, even to an extent that would not be called excessive, but considered within the bounds of moderation. The argument, too, in the above extract, to the effect that the restraint ought not to be imposed upon jurors while the use of such beverages are free to others, is unsound. If the safe and correct administration of the law requires the rule, it is no argument against it that it will require jurors to submit to restraints not imposed upon others or themselves when not in discharge of the duties of jurors. That they may properly discharge those duties, they do in fact submit to many restraints.

We are well satisfied that the rule in *The State* v. *Baldy* is sustained by reason, and that it is in accordance with sound legal principles, and is not unsupported by

authority, if, indeed, the weight of authority is not in accordance therewith.

The other question made upon the argument need not be considered, as, in our opinion, the verdict should have been set aside on account of the misconduct of the jurors in drinking intoxicating liquors after they retired to consider their verdict.

Reversed.