## CROCKETT vs. THE STATE.

*April 1 — April 19, 1881.*

CRIMINAL LAW AND PRACTICE. *(1) Setting aside verdict for separation of jurors. (2) Officer in charge may remain in jury room.*

1. During a trial for murder in the first degree, which lasted several days, several of the jurors, at different times, were permitted to separate from their associates and go to their homes in the city where the court sat, or to a hotel, or other public place, for the purpose of changing their clothing, inquiring after their mail, etc.; but in each instance the juror was attended by an officer, who swears that, during such separation, neither he nor any other person had any conversation with the juror about the cause, nor was there any such conversation by other persons in the juror's presence. Nothing was shown to discredit these statements. The affidavits of the jurors themselves were not procured. *Held*, that there was no error in refusing to set aside a verdict of guilty on account of the separation of the jurors. *Keenan v. The State*, 8 Wis., 132, distinguished.
2. The mere fact that the officer in charge of the jury was permitted by the judge to remain, and did remain, in the room with the jury, while they were deliberating upon their verdict, is no ground for a new trial.

ERROR to the Circuit Court for *Fond du Lac* County.

Plaintiff in error sued out his writ to review a judgment rendered against him on trial of an information against him for murder in the first degree.' The errors alleged will sufficiently appear from the opinion.

*Chas. W. Felker*, for the plaintiff in error.

For the defendant in error there were separate briefs by *The Attorney General* and *H. O. Fairchild*, district attorney of Marinette county, and oral argument by *Mr. Fairchild*.

COLE, C. J. · 1. In this case, after verdict, a motion was made for a new trial, founded on the minutes of the court and certain affidavits. The learned counsel for the plaintiff in error strongly urged us to settle the practice whether, under the statute, it is necessary in a criminal case to prepare a bill of exceptions, incorporating therein a motion for a new trial,

the minutes of court, and affidavits upon which the motion is based, and preserving the exception taken to the decision of the court overruling the motion; or whether the writ of error does not bring up, as a part of the record, all these papers, so that they can be considered by this court without being embraced in the bill of exceptions. The usual practice, undoubtedly, is to settle a bill of exceptions which shall contain such a motion, and all affidavits upon which it is based, and preserving therein the exception to the ruling of the court. That practice has been followed in this case. It is therefore not necessary to decide whether the motion for a new trial and the affidavits would have been before us for consideration without a bill of exceptions. That is an important question of practice, and we think ought not to be decided until it arises upon the record, as it does not here.

2. Several grounds were assigned in the motion for granting a new trial, but only two of them are relied upon here: (1) For the misconduct of the jury on the trial. (2) For the misconduct of the officer in charge of the jury, after the trial, while the jury were deliberating upon their verdict. The plaintiff in error was tried at Fond du Lac on the charge of murder in the first degree. The trial commenced on Thursday, the 25th of March, and continued until about 9 P. M. of the Monday following, when it was submitted to the jury. The affidavits show, and the fact is admitted, that five of the jurors, at different times during the progress of the trial, separated from their fellows. Three (Sickles, Breister and Docherty), under the charge of an officer, were permitted to go to their respective homes in the city for the purpose of changing their clothes. The juror Stewart was allowed to go to his home on Sunday, under charge of an officer, for the purpose of changing his clothing, and afterwards to take a walk in the city with such officer, stopping at one or two places to buy a cigar. Another juror, Juleff, also in charge of an officer, went on different days to the American House — at one time

Crockett vs. The State.

to ask the clerk for an envelope; at another to get a pair of rubbers, and to see if there was any mail for him. This is the separation or misconduct on the part of the jurors, which, it is claimed, vitiates their verdict.

At an early day it was decided by this court that the separation of the jury during the trial, in a case of murder or manslaughter, was a sufficient cause for setting aside the verdict and granting a new trial, "unless it appears that the separation of the jurors was not followed by improper conduct on their part, nor by any circumstances calculated to exert an improper influence on the verdict." *Keenan v. State*, 8 Wis., 132. The rule of that case has been followed since, and was examined in the recent case of *State v. Dolling*, 37 Wis., 396. In the latter case Chief Justice RYAN comments on the great difficulty in applying the rule in the *Keenan Case*, and thinks it is almost impossible to prove that the separation of the jury did not operate to the prejudice of the defendant, owing to the thousand different ways in which an improper influence or an unfavorable impression may be exerted or given to the human mind; and he remarks that "the only safe course is to refuse to let the jury separate" during the trial. That, doubtless, is the safer rule to be observed; still, where the juror separates under the charge of an officer, who remains with the juror all the time, and who is able to swear — as the officer practically does in this case — that he had no conversation whatever with the juror about the cause during the time of the separation; that there was no conversation whatever between any person and the juror about the same; and that there was no conversation whatever had by other parties in the presence or hearing of the juror relating to the cause, — this would seem to be sufficient to disprove any improper conduct of the jury, or improper influence which could affect the verdict. There is nothing to throw discredit or suspicion upon the statements of the officers having the jurors in charge, while separate, to the effect that no conversation was had with

the jurors or within their hearing on the subject of the case; and if it is possible to disprove misconduct, or that nothing occurred which was calculated to exert an unfavorable influence upon the verdict, the proof seems to have been made in this case. It is true, the affidavits of the jurors themselves were not procured — as it is insisted they should have been — showing that they heard no expressions from any one while separate which were calculated to influence their judgment or prejudice the defendant; but we do not think such affidavits were absolutely essential to disprove the fact that the separation worked no harm to him. It is apparent that in some of the states there has been a relaxation of the old rule that any separation of the jury in a capital case was a ground for a new trial, even without any evidence that the jury were communicated with concerning the cause. But the proof required by the rule in the *Keenan Case* would seem to afford full protection to the defendant against an improper verdict brought about or caused by separation. We must therefore hold that the affidavits before us do disprove, with sufficient legal certainty, that the defendant was prejudiced by the separation of the jurors.

3. When the cause was finally submitted, an officer was sworn to take charge of the jury. The learned circuit judge told the officer that he might remain in the room with the jury while they were deliberating, but at the same time cautioned such officer, in case the jury agreed, not to disclose the verdict to any one, nor to communicate to any one the progress or result of the deliberations of the jury. We think the fact is fully established by the affidavits, that the officer remained in the room with the jury while they were considering of their verdict, for the purpose of attending to the fire or furnishing the jury with water; but there is nothing whatever to show that he took any part in their deliberations or attempted in any manner to influence the verdict. But it is insisted by the learned counsel for the plaintiff in error, that the mere

presence of the officer in the room while the jury were consid-
ering of their verdict affords a sufficient ground for granting
a new trial. It is said the due administration of justice
requires that the utmost privacy should attend the deliber-
ations of the jury; that it is often necessary for the jury to
comment upon the testimony of witnesses, weigh their con-
flicting statements, and ascertain the real fact in issue; and
that the presence of an officer, whose friends may have been
witnesses on the trial, will prevent that full interchange of
views and free criticism in which the jury would indulge if
left entirely alone. There is undoubtedly force in these obser-
vations. But still we must presume, in the absence of all
showing to the contrary, that the officer was a proper person
to take charge of the jury; that his presence in the room with
them would not tend to embarrass their deliberations; and
that he was entirely disinterested as to the result of the trial.
It certainly will not do to assume that the learned circuit
judge would have placed the jury in charge of an officer who
had shown an undue interest in the event of the cause, or
whose friends had been material witnesses on the trial, so as to
render the presence of the officer in the room with the jury a
restraint upon their deliberations. Indeed, there is nothing to
show that the officer in this case was guilty of any misconduct,
or was unfaithful in the discharge of his sworn duty. Our
statute upon the subject of criminal trials in justice's court
provides that after the jury have heard the proofs and allega-
tions in the case they shall be kept together in some conven-
ient place until they agree on a verdict or are discharged by
the court; and an officer shall be sworn to take charge of them,
in like manner as upon trials in justice's court in civil pro-
ceedings. Section 4757, R. S.

In the justice's act the form of the oath which is adminis-
tered to the officer is given. No form of oath is prescribed
for the circuit court, but doubtless the same oath substantially
is administered to the officer as that taken in the justice's

court. See section 3652, R. S. That is, the officer is usually sworn to keep the jury together in some private and convenient place without drink, except water; not to suffer any person to speak to them, nor to speak to them himself, unless by order of the court, except to ask if they have agreed upon their verdict, until they have so agreed, or have been discharged; not to communicate to any person the state of their deliberations, or the verdict which they have agreed upon. Presumably an oath of this character was administered to the officer in this case. The language of such an oath implies that the officer is to be near the jury so as to prevent any communication, orally or otherwise, from being made to them, and where he may know the state of their deliberations. It is frequently the practice in this state for him to remain in the room with the jury, though of course he should religiously refrain from taking any part whatever in their conversation or discussions. But if the officer is a proper person to take charge of a jury, especially where, as in this case, the court directs him to remain in the room with the jury while they are considering of their verdict, we can see no valid objection to the practice. If in the room with the jury he is in a much better position to prevent any communication from being made to them by third parties to influence their verdict, than if he were away out of their sight and hearing. This must be obvious to any one reflecting a moment upon the subject. The only doubt we have had upon this point arises from the recent decision of the supreme court of Michigan in *People v. Knapp*, 42 Mich., 267. In that case it was held that if the officer in charge of the jury remain present in the room during the deliberations of such jury, though he may do nothing but listen, and it does not appear that a party has been prejudiced thereby, yet this will be a good ground for setting aside the verdict. We have examined with some care the opinion in that case, and confess, while we have the highest respect for the decisions of that able and enlightened tribunal, we are unable

to adopt its reasoning. We do not care to make any further comment upon the decision than to say it is not satisfactory to our minds, and we decline to follow it. This disposes of all the material points relied on for a reversal of the judgment.

*By the Court.*—The judgment of the circuit court is affirmed.