GROTTKAU, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 15, 1887 — January 10, 1888.*

CRIMINAL PRACTICE: NEW TRIAL. *(1) Election between counts: Reading wrong count: Failure to enter* nolle *as to counts abandoned: General verdict. (2, 3) Misconduct of jurors: Question of fact: Review on appeal: Treating jurors to liquor: Waiver.*

1. An indictment charged riot and unlawful assembly in the first count, and conspiracy to incite a riot in five other counts. Upon the trial the district attorney read the *last* count to the jury and stated that the defendant would be tried thereon "for riot and unlawful assembly only, and not for conspiracy." It was at once discovered that he had read the wrong count, and the court announced that the trial would be on the first count only, and explained the nature of the charge in that count. The court also stated that the other counts had been abandoned, and ordered that the trial proceed upon the first count, and the trial was had on that count only. No *nolle* was entered as to the other counts. The jury returned a general verdict of "guilty as charged in the

indictment." The punishment for the offenses charged in the several counts was the same. *Held:*

    (1) The reading of the wrong count could not have misled the jury, and is not ground for a reversal.

    (2) The verdict was sufficient.

2. A motion for a new trial was supported by two affidavits to the effect that the foreman of the jury, after being sworn as such and after the adjournment of the court on the first day of the trial, had said that the defendant was "going to be found guilty anyhow." This was fully denied in an affidavit by the foreman. The court denied the motion. *Held,* that such determination of the issue presented by the affidavits would not be disturbed by this court as being against the weight of evidence.

3. A motion for a new trial in a criminal case was based upon the alleged fact that two of the jurors had, during the trial, been treated to liquor by the counsel for the state. The alleged misconduct was known to the defendant three days before the cause was finally submitted to the jury, but was not brought to the attention of the court until four days after the verdict. *Held,* that the defendant had waived the objection.

ERROR to the Municipal Court of *Milwaukee* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

The plaintiff in error and one Albert Moessinger were indicted in the municipal court for Milwaukee county, June 1, 1886. The indictment contained six several counts; the first of which was to the effect that said *Grottkau* and Moessinger, together with divers other evil-disposed persons to the number of five and more, to the jurors yet unknown, on April 24, 1886, at the city of Milwaukee, did unlawfully assemble in a violent and tumultuous manner to do an unlawful act, to the terror and disturbance of others, against the peace and dignity of the state of Wisconsin. This was followed in the indictment by five several counts, in each of which they were charged with a conspiracy to incite a riot.

The cause was first tried about the 1st of December, 1886, when the jury disagreed. April 4, 1887, a *nolle prosequi*

was entered, on motion of the district attorney, as to the said Moessinger. Wednesday, April 27, 1887, the cause came on for trial in said municipal court, with Hon. A. Scott Sloan, judge of the Thirteenth judicial circuit, presiding, whereupon a jury was impaneled and sworn; when the prosecuting attorney, on opening the case to the jury, read to them the *last* count of the indictment, and stated that *Grottkau* was to be tried upon that count " for riot and unlawful assembly *only, and not for conspiracy.* It was immediately discovered by the court and counsel in the case that the count of the indictment which had been read to the jury was a count for conspiracy; and the ccurt announced that the trial would be on the *first* count of the indictment *only,* which was a count for riot and unlawful assembly, and that on the first trial of this case the counts for conspiracy in said indictment had been abandoned by the prosecution; and the court thereupon, before any testimony was taken, *ordered and directed that the trial should proceed upon the first count of the indictment,* and thereupon the trial was had *upon that count only.* On the present [last] trial of this action, all the testimony in the case was directed and ap plicable only to the first count of said indictment, which was for riot and unlawful assembly, and there was no testimony whatever offered by the prosecution upon the remaining counts in said indictment, which were each and all for conspiracy only." The trial continued from April 27, 1887, to May 3, 1887, inclusive, except the trial was adjourned Friday, April 29th, to Monday, May 2d. May 3, 1887, the jury " brought in a verdict of guilty as charged in the indictment," and the court thereupon suspended sentence until the further order of the court. During the trial nine witnesses were sworn on the part of the state and twelve on the part of the accused, but the record contains no part of such testimony, nor any of the rulings of the court upon said trial, except as above or hereinafter stated.

May 7, 1887, the attorney for the prisoner moved the court for a new trial upon the grounds that "the verdict was general," and rendered under the circumstances stated; and "for the misconduct of the jury." Several affidavits and some testimony relating to such alleged misconduct of two of the jurymen and the incompetency of another, is preserved in the bill of exceptions. The court denied the motion, and "thereupon adjudged, and it is the sentence of the court now here, that you, *Paul Grottkau*, be punished by confinement at hard labor in the house of correction of Milwaukee county for and during the full term of one year." To review that judgment the accused has sued out a writ of error.

*William H. Ebbets*, for the plaintiff in error, contended, *inter alia*, that the court below erred in refusing a new trial on account of the misconduct of the jury in the use of spirituous and intoxicating liquors during the trial, citing, besides cases cited in the opinion, *Westmoreland v. State*, 45 Ga. 225. To the point that a new trial should have been granted on the ground that, although all the testimony was introduced and taken upon the count for riot and unlawful assembly, yet the verdict was a general one, of "guilty as charged in the indictment," he cited *Eldredge v. State*, 37 Ohio St. 191; *In re McCormick*, 24 Wis. 492; *Carter v. State*, 20 id. 647; *Queen v. Castro*, L. R. 5 Q. B. Div. 490; *State v. Kube*, 20 Wis. 217; *State v. Hill*, 30 id. 416; *Comm. v. Briggs*, 5 Pick. 429; *S. C.* 7 id. 177.

The *Attorney General*, and *L. K. Luse*, Assistant Attorney General, for the defendant in error, to the point that the drinking of liquor by the jury was not a ground for a new trial unless there was reason to suspect that it may have influenced the final result, cited *Roman v. State*, 41 Wis. 312; *State v. Tatlow*, 34 Kan. 80; *State v. Cook*, 65 Iowa, 560; *Wilson v. Abrahams*, 1 Hill, 207; *People v. Lyle*, 6 Crim. Law Mag. 76; *Duke of Richmond v. Wise*, 1 Vent.

124. A party cannot know of the misconduct of a juror during the trial and keep his silence until the verdict goes against him, and then complain of it as error. *Berry v. De Witt*, 27 Fed. Rep. 723; *State v. Tuller*, 34 Conn. 280.

CASSODAY, J. There is no intimation of any lack of evidence to support the conviction. There is no claim that any evidence on the part of the state was improperly admitted. There is no claim that any evidence on the part of the defense was improperly rejected. No part of the motion for a new trial was based upon any want of evidence to support the verdict. The failure of the accused to make any of the evidence upon the merits, or any of the rulings of the court thereon, a part of the record, are implied confessions that his guilt was sufficiently established by the testimony, and that such rulings throughout were fair and impartial. The several errors assigned are all based upon the refusal of the court to set aside the verdict and grant a new trial. These will be considered in the inverse order in which they were urged by the learned counsel for the defense.

1. The mere inadvertence of the district attorney in reading the last count of the indictment instead of the first, in connection with his statement to the jury that the accused was to be tried "for riot and unlawful assembly *only, and not for conspiracy*," immediately followed by a correction and direction from the court, "that the trial would be on the first count of the indictment *only*," and then explaining the nature of the charge in that count, could, and confessedly did, mislead no one, and certainly is no ground for reversal.

2. It is conceded that it was understood by all at the trial that the accused was being tried only for the crime of unlawful assembly and riot, and consequently that no testimony was offered under any of the other counts. But it

is urged that such understanding in no way relieves or obviates the alleged error of record in receiving a general verdict without having formally entered a *nolle prosequi* upon the other counts in the indictment, or any acquittal upon those counts, or any direction to the jury to confine their verdict to the first count upon which he was so tried. No part of the charge to the jury is in the record. We have no knowledge, therefore, as to what directions were or were not therein given. We have no right to infer any direction or want of direction which would militate against the verdict; on the contrary, we are bound to presume, in the absence of the charge, that the directions therein were most favorable to support the verdict. *Graves v. State*, 12 Wis. 595; *Bowen v. Malbon*, 20 Wis. 491. It has been held that explicit instructions as to the form and effect of the verdict in such case prevents what otherwise might be error. *State v. Smith*, 18 S. C. 149. The court here " *ordered and directed* that the trial should proceed upon the first count of the indictment," after the district attorney had made the statement mentioned, and the same had been fully corrected and explained by the court, as above stated, with the announcement " that the trial would be on the first count of the indictment *only.*" All that occurred, when taken together, as shown by the record, was, as we think, equivalent to, and in effect the entry of, a *nolle prosequi* as to all the counts in the indictment except the first, which is conceded to be the only one upon which the accused was tried. Besides, it may be observed that the punishment for the offense charged in each of the several counts of the indictment was the same. Secs. 4511, 4512, R. S. The accused was only tried upon the first count in the indictment. The sentence imposed was no greater than authorized upon a conviction under that count alone. *Ibid.* Certainly, the accused was in no way prejudiced. In these respects the case differs from *Carter v. State*, 20 Wis. 647, cited by coun-

sel. It is more like *State v. Kube,* 20 Wis. 217, 91 Am. Dec. 390. It is substantially the same as *Nelson v. State,* 52 Wis. 534, in which it was in effect held that where one is charged in separate counts with different crimes, each of which was subject to the same punishment, a general verdict of guilty was sufficient, without specifying the count to which it related. We must hold that it was not error for the trial court to refuse to set aside the verdict by reason of its generality.

3. On the motion for a new trial, two affidavits were presented, sworn to by Waterman and Edward G. Wegner, three or four days after the rendition of the verdict, to the effect that George C. Bingham, the foreman of the jury, on the first day of the trial, Wednesday, April 27, 1887, and after he had been sworn as such and the court had adjourned for the day, stated in their presence, at a time and place named, that " *Grottkau* is going to be found guilty anyhow," after having sworn as to his qualification as a juryman, in effect, that he had formed no opinion and did not think he had expressed any opinion as to the guilt or innocence of the accused. In opposition thereto, an affidavit of said foreman was presented, to the effect that he had read said two affidavits; that he did not know either of the persons making the same; that he " did not at the time and place stated, or at any other time and place during the trial of said cause, state that ' *Grottkau* is going to be found guilty anyhow,' or any words to that effect, or give any opinion as to the result of the case until after the verdict was rendered." The issue thus presented between the foreman and the makers of the two affidavits mentioned was, one of fact, for the trial court. Manifestly, it was determined in favor of the truthfulness and integrity of the foreman. The court necessarily witnessed the conduct and bearing of the juryman named during the trial, and we do not feel authorized to hold that such determination was against the weight of evidence.

4. It is urged that the verdict should have been set aside on account of two jurymen having been treated by counsel for the prosecution pending the trial. The law undoubtedly regards with scrupulous jealousy every attempt of any party or counsel to bias or improperly influence members of the jury pending a trial. Such cautious regard is commendable. With an occasional exception, the proverbial integrity of jurymen, and the difficulties and dangers of attempting such intermeddling with so large a body of men, each of whom is supposed to be on his guard, has deservedly given a very remarkable permanency to the jury system. However desirable it may be that no perpetrator of crime should go unpunished, it is still more important that the law should be administered with impartiality and fidelity as well as firmness. The decisions of the courts are not entirely harmonious as to the effect upon the verdict for one or more of the jurymen to partake of intoxicating drinks pending the trial. Several courts of high authority have held that such indulgence, even without the knowledge or agency of either party, vitiates the verdict. *People v. Douglass*, 4 Cow. 26; *Brant v. Fowler*, 7 Cow. 563; *Gregg's Lessee v. McDaniel*, 4 Har. (Del.), 367; *State v. Bullard*, 16 N. H. 139; *Leighton v. Sargent*, 31 N. H. 119; *State v. Baldy*, 17 Iowa, 39; *Ryan v. Harrow*, 27 Iowa, 494; *Davis v. State*, 35 Ind. 496; *People v. Gray*, 61 Cal. 164, 44 Am. Rep. 549. In most of these cases, however, the drinking was after the cause had been submitted to the jury, and of course during the time for their deliberations. In Iowa a different rule prevails, notwithstanding the cases cited above, where the drinking takes place before such submission, as will appear in cases cited below. The rule stated was relaxed in New York many years ago to the extent of holding that where the drinking was not to excess, nor upon invitation or at the expense of either party, and with no reason to suspect that it influenced the final result, it should not be

allowed to overturn the verdict. *Wilson v. Abrahams*, 1 Hill, 207. In that case Mr. Justice BRONSON ably reviews the earlier cases, and, in effect, deduced the rule last stated. Substantially the same rule was followed in this state several years ago. *Roman v. State*, 41 Wis. 312; *Crockett v. State*, 52 Wis. 211. The same is true in other states. *Van Buskirk v. Daugherty*, 44 Iowa, 42; *State v. Bruce*, 48 Iowa, 530, 30 Am. Rep. 403; *State v. West*, 69 Mo. 401, 33 Am. Rep. 506; *State v. Baber*, 74 Mo. 292, 41 Am. Rep. 314; *Jones v. People*, 6 Colo. 452, 45 Am. Rep. 526; *State v. Jones*, 7 Nev. 408; *Larimer v. Kelly*, 13 Kan. 78. See 7 South. Law Rev. 524–526, and cases there cited.

It appears from the affidavits and testimony taken in behalf of the accused in support of the motion for a new trial, in effect, that soon after the adjournment of the court on Friday, April 29, 1887, to the following Monday, the accused and his two counsel and two friends saw the district attorney and assistant counsel for the state going to a certain saloon, and just before entering it one of them beckoned two of the jurymen, Trantlage and Jaeger, and said to them, "come on," which they did, and the four entered the saloon together; that thereupon the accused, with his two counsel and two friends, followed them into the saloon, and there found them standing at or near the bar with glasses containing beer or liquor and a bottle standing upon the counter; whereupon one of the counsel for the accused inquired, "Who is paying for this?" or "Whose treat is this?" when the counsel for the state responded, "I do," and then asked both of the counsel for the accused to take something, which they declined; that the accused then treated his party to cigars and left. On the part of the state, affidavits of the two jurymen, two deputy-sheriffs, and the testimony of the district attorney were presented to the effect that the two jurymen went into the saloon first, and without any invitation; that afterwards the dis-

trict attorney, counsel for the state, and two of the deputy-sheriffs went into the saloon together; that they were followed by the accused and his party; that thereupon, and after the question and answer stated, the counsel for the state directed the bar-keeper to give all who were present something, and that all persons present took either a drink or a cigar, with the exception of one of the counsel for the accused, and that each of the two jurymen took a cigar; that neither of the jurymen had any conversation with any one about the case, nor was invited to drink by the district attorney or counsel for the state, except in the general way stated; that after the attorneys had all left the saloon one of the jurymen treated those who remained himself. The charge that the two jurymen were invited into the saloon by the district attorney is substantially denied. There is some ground for believing that there was some mistake as to the person calling, if not as to the person called. One of the jurymen testified that he " called " the other juryman " over to said restaurant." But the charge that the juryman drank liquor at the expense of counsel for the state is not squarely met and denied. It is to be regretted that any treating of the jurymen should have been indulged under the circumstances claimed by either party. If the jurymen were in fact invited into the saloon, and there treated, as claimed on the part of the accused, then they, as well as the others implicated, might justly have been censured and punished by the court. If, on the other hand, the jurymen went into the saloon first and of their own motion, and the meeting there was purely accidental, then the treating, under the circumstances admitted, was not as bad, but nevertheless a gross impropriety, which should have met with a prompt refusal, if not rebuke, from the jurymen. We are inclined to think that the trial court might fairly, and probably did, take this latter view of the facts.

But, notwithstanding such impropriety, yet it does not necessarily follow that the verdict should have been set aside upon the showing made. As indicated, the treating took place three days before the cause was finally submitted to the jury. The accused and his two able counsel were present at the time, and knew all about the alleged misconduct. During the three days, no action of the trial court was invoked thereon. In fact, the matter does not appear to have been brought to the attention of the court during that time. On the contrary, the accused and his counsel, for aught that appears in the record, remained silent on the subject until four days after the verdict, and then assign it as a ground for a new trial. The motive for thus remaining silent does not appear. It may have been supposed that such impropriety would tend to bias the jury in favor of the accused. With some men it probably would have had that effect. In fact, one of the two jurymen in question swore that "he was one of the last of the jury, after due deliberation, to vote for the conviction." Whatever may have been the motive for the delay in bringing the matter to the attention of the court, the law will not allow a party to secure a benefit by thus speculating upon the chances. In the trial of causes, as well as other matters conducted by human agencies, there will unavoidably be more or less inadvertence, irregularity, mistake, impropriety, and error. As often reiterated, the administration of the law is not an exact science; and yet it aims at substantial justice, and generally secures it. By reason of these things, parties and their counsel, in criminal as well as civil cases, are required to bring any supposed impropriety or error to the attention of the court and obtain a ruling or action thereon at the earliest opportunity, in order to become available. Even then the party feeling aggrieved must promptly take and preserve in the record his exception, or the supposed error will be deemed waived. This has been the uniform ruling

of this court, even in cases of murder: *Knoll v. State*, 55 Wis. 256. The courts go to the extent of holding that an application for a new trial on the ground of the misconduct or incompetency of a juryman, *is insufficient* if it fails to show that such misconduct or incompetency *was unknown* to the applicant and his counsel before the submission of the cause to the jury. *Brown v. LaCrosse C. G. L. & C. Co.* 21 Wis. 56; *State v. Vogel,* 22 Wis. 471; *Bennet v. State,* 24 Wis. 57; *Bonneville v. State,* 53 Wis. 680; *Rollins v. Ames,* 2 N. H. 349, 9 Am. Dec. 79; *State v. Tuller,* 34 Conn. 280; Hill. New Trials, 83–87, §§ 2–6. Here, the treating was known to the accused and his counsel three days before such submission, and was not brought to the attention of the court until four days after the verdict, and must therefore be deemed to have been waived. The same rule is applicable to the alleged incompetency of the foreman.

*By the Court.*— The judgment of the municipal court is affirmed.

See note to this case in 36 N. W. Rep. 32.— REP.

