New York Oyer and Terminer. September, 1851. Before *Edmonds*, Justice of the Supreme Court, and two of the Aldermen.

## The People *vs.* Henry Carnal.

On a motion for a new trial, on the ground of improper conduct of the jury, the affidavits of the jurors are not admissible to prove such improper conduct.

A communication made to a jury while deliberating, by a party in whose favor the verdict is rendered will avoid the verdict; but a verdict will not be set aside because of such communication, where it is made by the losing party or by a stranger to the controversy.

Where, on a trial for murder, while the jury were consulting together upon their verdict, one of them sent the officer in charge of them to the court, to request that the statute or some book containing the law of manslaughter should be sent to them, and the officer returned and informed the jury that "Judge Edmonds said they had nothing to do with manslaughter," and they found the prisoner guilty of murder, on motion before the court of Oyer and Terminer for a new trial, on the ground of such communication to the jury, a new trial was denied.

This was a motion for a new trial. The prisoner had been convicted in March, 1851, of the murder of Charles M. Rousseau and sentenced to be executed on the 2d day of May, 1851. Before that time the governor respited his execution, to enable him to avail himself of a bill of exceptions taken on the trial. An application was then made to the governor for a pardon or commutation of sentence, on the ground that after the jury retired to deliberate on their verdict, the presiding judge had improperly given them private instructions in the absence of the prisoner or his counsel. The governor refused the application, but again respited the execution until the 19th of September, to give the prisoner an opportunity of moving the court for a new trial upon the affidavits which were laid before him, and this motion was made accordingly.

On the part of the prisoner, affidavits were read from eleven of the jurors, setting forth that the jury, after they had retired, requested the officer having them in charge to ask the court to furnish them with the law of manslaughter, or instruct them as

to what that law really was, and that the officer in a few minutes returned and stated that the jury as matter of law had nothing whatever to do with manslaughter, that the indictment was for murder only, and the case was not one of manslaughter, and that Judge Edmonds had directed the officer so to state to the jury, and one of the jurors was made to swear that but for that communication he could not have conscientiously brought in a verdict of murder.

On the part of the prosecution, the affidavits of ten of the jurors were read, stating that the jurors were at once unanimous in finding the prisoner guilty, but that one of them, from his repugnance to taking life, desired to confine the verdict to manslaughter, that thereupon one of the jurors directed the officer to request the court to send them the statute or some book containing the law of manslaughter — that the officer gave for answer: Judge Edmonds says you have nothing to do with manslaughter — and that this communication had no influence with the jury, because the court had clearly, in their charge, said the same thing. Some of the jurors stated further, that when called upon to make their affidavits in behalf of the prisoner, they told the counsel who called upon them, what occurred as they now related it, and were told by him that it was matter of form as to the precise words, that he desired the affidavit to show the fact of the communication from the court to the jury; that the judge had no right to communicate with the jury except in open court, and that the object was to procure a commutation of the punishment to imprisonment for life, and not to apply for a new trial. It was not alleged that the court had authorized the officer to make any communication to the jury.

*Clinton* and *H. F. Clark* for the prisoner, contended that the irregularity of the officer in making the communication to the jury without the order of the court, rendered the verdict entirely void.

*Blunt* (district attorney), objected, 1. That the affidavits of the jurors could not be read. 2. That the court after sentence pronounced, had no power to grant a new trial. 3. That the

irregularity, though it might subject the officer to punishment, in no manner affected the verdict, and 4. That the granting a new trial is a matter in the discretion of the court, which ought not to be granted in this case, because no injury had been done to the prisoner, inasmuch as the language used by the officer was a mere repetition of that which had already been used by the court in its charge to the jury, and because the witnesses, by whom alone the prisoner's guilt could be established, had left the state and gone to parts unknown in the interior of South America, never to return.

EDMONDS, Presiding Justice, delivered the opinion of the court

The facts on which the new trial is moved for, as established by the affidavits are simply these: that while the jury were consulting together of their verdict, one of them called the officer having them in charge and said to him, " ask the court to send the jury the statute or some book containing the law of manslaughter," that the officer after a short interval returned and said, " Judge Edmonds said they had nothing to do with manslaughter."

The officer was not instructed by the court or any member of it to make any communication to the jury, but it is probable (though on that subject there is no evidence), that when the officer made the application for the book, the judge refused it in the language used, and the officer instead of refusing to speak to the jury — as he ought to have done, having no leave from the court; or instead of saying to the jury " you can not have the book," — conveyed the refusal to the jury in the words used by the judge in giving it to him.

For the communication thus improperly made by the officer to the jury without authority from the court, a new trial is moved for, and the question is whether the irregularity is one which renders the verdict void.

If such is the rule of law, it must be rigidly enforced, however untoward the event which works such a result. Of the prisoner's guilt of the crime of murder, not a doubt can remain

The People *v.* Carnal.

on any rational mind, and there is every reason also to believe, that that crime was perpetrated while he was attempting another — that of robbing his benefactors. And so, too, it is equally manifest that if a new trial is now granted, the prisoner must escape the punishment which the law denounces upon the crime he has committed, for the witnesses by whom alone the facts can be proved have left the country and returned to the interior of South America, whence their testimony can not be procured so as to be used on the trial. And it is under such circumstances that the court is called upon to recognize the principle, that an unauthorized communication to the jury by the constable having them in charge, renders their verdict void.

If this be so, then is the due administration of justice more under the control of the ignorance or corruption of the constables who are in attendance at the court, than has been hitherto supposed.

I dismiss from view entirely the consideration how far the communication influenced the jury; and for two reasons.

In the first place, while one of the affidavits on the part of the prisoner conveys the idea that but for that communication, one of the jurors " could never have reconciled it to his conscience to concur " in a finding of murder, the affidavit of the same juror and those of nine of his colleagues produced on the part of the prosecution clearly establish that the jury were already unanimous in their opinion that the prisoner was guilty of murder; that the question of manslaughter was agitated among them merely from " a repugnancy " on the part of the juror " to taking human life;" that all of them had previously very distinctly understood from the charge of the court, that there was no question of manslaughter in the case, and that their verdict was in no respect affected by the communication.

In the second place, while the affidavits were admissible to prove an impropriety on the part of the constable, they were in no respect admissible to prove any on the part of the jury; and it surely would be an impropriety of a high character, for a jury to take the law of a case from the constable at their door

I therefore examine the question in its naked aspect, whether, as matter of law, such a communication does necessarily render the verdict void.

It is undoubtedly true that any communication to a jury while deliberating, made by a party in whose favor their verdict is rendered, will avoid their verdict, and that, no matter whether it had any effect upon their minds or not: for the best of reasons, that it is thus alone the purity of the trial by jury can be preserved. But we were shown no case, though we asked for one, where such an effect has ever been given to a communication made by the losing party or by a stranger to the controversy, nor can I, by my own researches, find any such. And, as I suppose, for an equally good reason: that it would be giving to intermeddlers a power and control over the administration of justice that is denied even to the courts.

It is not worth while to spread out here the details of the examination which I have made. I have given the subject the careful consideration its vital interest to the prisoner demands, and the conclusion at which I have arrived is quite satisfactory to my own mind, both on principle and authority.

A reference to two or three cases will be sufficient. In the case of *Taylor* v. *Everett* (2 *How. Pr. R.* 23), our late supreme court held that a communication made by the constable to a juror, which the juror swore induced him to agree to the verdict, was not enough to set it aside, though the conduct of the constable was deserving of severe animadversion. In *Harrison* v. *Rowan* (4 *Wash. C. C. R.* 32), the jury after they went out took refreshments without leave of the court. The court held it was misbehavior to do so, but the verdict would not be affected, unless they were furnished by the party in whose favor they found. So, where a juror had left his seat without knowledge of the court or either party. (*Ex parte Hill*, 3 *Cow. R.* 355.) So, too, when the jury had retired to deliberate on their verdict. (1 *Cowen*, 221.) In the case of *The King* v. *Wolfe* (1 *Ch. R.* 401), where the subject was very fully examined by the English judges, and in *The People* v. *Douglass* (4 *Cow.* 33), in our own state, it was held that the mere separation of

The People *v.* Carnal.

the jury, without any further abuse, would not affect the verdict.

And in *Everett* v. *Youells* (4 *Barn. & Ad.* 681), where the servant of one of the jurors privately conveyed some food to him while they were deliberating, the court held that it might be ground for imposing a fine, but it was not a reason for setting aside the verdict, and *Parke, J.,* with great propriety says: " The officer who attended the jury may be punishable, but it would be a fearful thing if verdicts could be set aside on such grounds as this."

It would be so indeed, and this case would be a strong exemplification of the truth of the remark. Here is no complaint that the prisoner was not rightfully convicted or that the verdict was not fully warranted by the evidence, no complaint that the law was improperly laid down by the court. The jury were unanimous in a verdict, which the court has already had occasion to express its approval of. The witnesses by whom alone the prisoner's guilt can be established, are beyond the jurisdiction of the court. It was a frightful crime which the prisoner committed, and it is now claimed that he shall escape the consequences, because the constable in charge of the jury was guilty of an impropriety! This can not be. Both principle and authority forbid it.

I purposely abstain from examining the other questions raised on the argument, because having on the merits arrived at a conclusion adverse to the motion, it must be denied, whatever our views upon those other questions.