## ADAM H. HAGER vs. DANIEL HAGER.

Requisites and validity of a complaint under the title of the revised statutes respecting " Proceedings to compel the determination of claims to real property in certain cases," as amended by subsequent statutes and modified as to the forms of proceeding, by the code.

In such an action, proof that the premises in question were assessed to the plaintiff, as owner, is admissible, as tending to show a claim thereto on his part, somewhat open and notorious, and to give practical character to his assertion of title.

In such an action it is not erroneous to charge the jury that in case they find the plaintiff has no title to the premises, and they for that reason find for the defendant, they may proceed one step further, and determine whether the defendant has title to the whole, or to any and what portion thereof.

Nor is it erroneous to charge that the non-production of a deed (alleged to contain a material clause fraudulently inserted) in the defendant's possession, and purposely suppressed by him, and containing evidence bearing strongly on the question of fraudulent insertion, is a circumstance from which they *may* pronounce against the defendant, as to that clause.

It is the duty of the county clerk to record the memorandum of alterations and interlineations in a deed; and it is not erroneous in a judge to charge the jury that the absence of any such memorandum, in the record, is a circumstance for their consideration in connection with the question of an alleged fraudulent insertion in the deed.

What irregularities in the conduct of a jury will not be sufficient grounds for a new trial.

THIS was a motion for a new trial, upon exceptions, ordered to be heard in the first instance at the general term. Also an appeal from an order of a special term, denying a motion to set aside the verdict for irregularity. The facts are sufficiently stated in the opinion of the court.

*Lyman Tremain*, for the plaintiff, (respondent.)

*Henry Smith*, for the defendant, (appellant.)

*By the Court*, HOGEBOOM, J. The complaint in this action sets forth that the action is brought pursuant to chapter 5, part 3, title 2 of the revised statutes, entitled " Proceedings to compel the determination of claims to real property in certain cases," and in pursuance of the code of procedure;

and alleges that the plaintiff is and has been possessed of, and the owner in fee, and still is, of a part of lot No. 12, lying and being in a patent granted to George Clark, beginning on the west bank of the Schoharie creek, (describing the same,) tracing the title thereto down from about the period of the declaration of independence to the time of the commencement of the action, in 1859; alleging that the plaintiff obtained title thereto by deed, in 1837, from his brother Frederick Hager, and that the plaintiff "thereupon succeeded to the actual possession, occupation and fee thereof, and has ever since continued and still does continue in the actual possession thereof, and does possess and own the same in fee." The complaint proceeds to allege that the defendant unjustly claims title to 17 acres, 2 roods and 28 rods thereof, and caused a written notice and claim of title to be served on the plaintiff, (a copy of which is annexed to the complaint;) and further alleges that the plaintiff has been in the *uninterrupted actual possession* of said premises, *claiming title adversely*, for more than 20 years; and demands judgment that the defendant and all persons claiming under him be for ever barred from all claims to any estate of inheritance or freehold to the said premises, with costs of suit, and for such other relief as shall be proper. The notice annexed is as follows: "Take notice, that the undersigned Daniel Hager claims title to the piece of land of 17 acres, 2 roods and 28 rods, described in the annexed map as upland, and demands the possession of the same, and hereby gives notice that for any interference therewith or the timber on the same, he will regard you as a trespasser. Yours, &c., Daniel Hager. Dated June 11th, 1859. To Adam H. Hager, Esq."

The defendant's answer admits the plaintiff's title to a portion of the land described in the complaint, but denies it as to the 17 acres, 2 roods and 28 perches, as to which the defendant alleges that he is "the owner in fee and in the actual possession." It also admits some of the conveyances under which the plaintiff claims, but denies that the description

Hager *v.* Hager.

embraced the tract in question, and denies that the plaintiff has been in the uninterrupted actual possession of the same, claiming title adversely, for more than 20 years. It further alleges that this tract, with other land, was conveyed to the defendant and John J. Hager as tenants in common, and this tract released by John J. Hager to the defendant, and he claims title thereto as owner in fee, Wherefore the defendant demands judgment that the plaintiff and all persons claiming under him be for ever barred from all claim to any estate of inheritance or fee to said premises, and for general relief.

The plaintiff put in a reply, denying generally " each and every allegation in the answer contained, which sets up matters in avoidance of the allegations contained in the complaint therein. Wherefore the plaintiff demands judgment, as stated in the complaint."

The issue thus joined came on to be tried before Justice PECKHAM, at the Schoharie circuit, in November, 1860, The land is situated in the town of Blenheim, in the county of Schoharie. After the cause was opened to the jury, and before any evidence was taken, the defendant's counsel moved to nonsuit the plaintiff, on the grounds, 1. That the complaint does not state facts sufficient to constitute a cause of action. 2. That the statute referred to in the plaintiff's complaint does not give the plaintiff authority to prosecute as plaintiff, and that this action can only be prosecuted by the defendant. Each of which motions so made by the defendant were overruled by said judge. To which ruling and decision the counsel for the defendant excepted. This presents the first question for our decision.

It seems clear enough that the complaint cannot be sustained as an ordinary complaint in ejectment. But I think, upon the authority of the case of *Hammond* v. *Tillotson,* (18 *Barb.* 332,) it is a good complaint under the title of the revised statutes entitled " Proceedings to compel the determination of claims to real property in certain cases," as amend-

ed by subsequent statutes, and modified as to the forms of proceeding, by the code. (2 *R. S.* 313. *Laws of* 1848, *ch.* 50 ; 1855, *ch.* 511. *Code,* § 449.) It seems to have all the essential elements of, and to demand the relief required by, the *notice* specified in that title. In arriving at this conclusion I lay out of view, as surplusage, the notice appended to the complaint, served by Daniel Hager on Adam H. Hager. It in nowise complies either in form or substance with the notice mentioned in the aforesaid title, and cannot be sufficient to authorize Daniel Hager to become the actor in initiating proceedings under that title, nor to debar Adam H. Hager from resorting to proper proceedings under that title to compel the determination of claims to the property in .question. I think, therefore, this motion for a nonsuit was properly denied.

I think the interrogatory put to the plaintiff, as to permission asked of him by Ells, an adjoining owner, to cut wood near the fence on the south side, was not improperly allowed. If such permission was sought, it was a *verbal act* characterising the extent of the claim of an adjoining owner, and the possessory claim and acts of ownership of the plaintiff. It is scarcely of importance enough, even if it were technically objectionable, to justify a new trial on that ground.

I have more doubt as to the question allowed to be put to the witness Kniskern, to show that the premises were assessed by him, as an assessor of the town, to the plaintiff. But as tending to show a claim thereto on the part of the plaintiff, somewhat open and notorious, and to give practical character to his assertion of title, I think it may be justified. If the question had been, has the plaintiff paid taxes upon these premises, it seems to me that fact would have been, however slight, admissible as some evidence of a claim and act of ownership. Title to lands not under actual cultivation or inclosure must be made out, to some extent, through the claims and exercise of practical acts of ownership, (that is, acts indicating ownership or supposed ownership,) on the part

of the person asserting title. And the payment of taxes would, I think, be an act of this description. The question put is nearly identical. It was doubtless intended to be followed up by proof of the payment of the tax, in pursuance of the assessment, or what is more probable, the latter fact was regarded as practically included in the former; and as no specific objection was made raising the point of discrimination between the two, I think they may be regarded as meaning one and the same thing. Indeed, independent of this, I am not sure that the entry of this tract on the assessment roll to the plaintiff in this action, open to the inspection of the defendant and all other persons, by a public officer whose especial business it was to make such entries, and to make the necessary personal observation, and obtain the necessary official information to enable him to make such entries according to the truth, would not be a fact of open claim and recognized ownership or possession, which, however insignificant in real effect upon the question of title, would not be *admissible* evidence on that question, as a circumstance proper for the consideration of a jury. I think, on the whole, a new trial ought not to be granted on this account.

The remaining exceptions relate to the charge of the judge.

The judge is supposed to have erred in charging the jury that in the event they found that the plaintiff had no title to the premises, and for that reason found for the defendant, they might proceed one step further, and determine whether the defendant had title to the whole, or what portion thereof. I see no objection to such an instruction to the jury. In this peculiar proceeding the defendant occupies substantially the position of a plaintiff in the action of ejectment, and must recover on the strength of his own title, which, as to nature and territorial extent, must in the action of ejectment be particularly stated in the verdict; and I think it not improper to have it so stated in this form of proceeding, if indeed the statute does not peremptorily require it; for the verdict *must* specify whether the defendant is entitled to immediate pos-

session, or only to an estate in reversion or remainder; and a writ of possession issues or does not issue accordingly. (2 *R. S.* 314, §§ 13 *to* 16, *as amended by ch.* 511 *of Laws of* 1855.) It can be no less proper, especially with a view to the form and effect of the ultimate judgment to be pronounced in the case, that the verdict should specify the *extent* of the defendant's title, whether covering the *whole,* or only a *part* of the premises; for if only the latter, then it would seem, in analogy to the practice in ejectment, the verdict must specify that the adverse party is entitled to the residue, or the judgment must declare that the defendant's recovery is to be limited to the portion thus ascertained to belong to him. There does not, therefore, seem to have been any error in this direction to the jury. Independent of this, however, the exception is wholly *unimportant,* as the jury never reached that stage of the case, having decided in favor of the plaintiff, and therefore having had no occasion to designate the nature or extent of the defendant's alleged title.

The next exception is also not well founded. The judge charged that the non-production of a deed (alleged to contain a material clause fraudulently inserted) in the defendant's possession, and *purposely suppressed* by him, and containing evidence bearing strongly on the question of fraudulent insertion, was a circumstance upon which the jury *might* pronounce against the defendant as to that clause. There was no error in this direction. It contained no positive direction, but submitted the matter to their determination, leaving them to decide upon the weight due to it.

Nor do I think the succeeding exception well taken. The judge charged that it was the duty of the clerk to record the memorandum of alterations and interlineations in a deed, and that the absence of any such memorandum in the *record* was a circumstance for their consideration, as to that clause and its fraudulent insertion. To which the defendant excepted. It is not apparent whether the defendant intended to except to the whole of this sentence, or only to the latter

clause. It is the duty of the clerk to *record* the conveyance and the certificate of proof or acknowledgment. (1 *R. S.* 756, 760.) His duty, or the mode of performing it, is not more *particularly* defined. It is apparent, however, that every thing on the face of the deed or certificate which can be put upon record, and which is material to throw light upon its *bona fide* or *fraudulent* character, *ought* to be recorded; and it may therefore be said it is the *duty* of the clerk to make the record in that way. It may not be, and probably is not, indispensable that the *record* should contain on its face the same interlineations, alterations or erasures as the original paper; but it is highly proper, and I think the *duty* of the clerk, to record the memorandum of such interlineations, alterations and erasures, made or certified by the attesting witnesses. Otherwise the record does not with *strict truth* represent the original document, nor contain the *whole* of its contents. The existence of such a memorandum may aid materially in determining the authenticity of portions of the deed, and its absence on the record may produce a false impression as to the appearance and genuineness of the original document. And without exacting undue strictness, or undertaking to define in every respect how the directions of the statute shall be carried out, I think it is incumbent upon the clerk to enter upon the record every portion of the contents of the original paper, whether it consist of the names of the parties or witnesses, the reciting, granting or descriptive part of the instrument, or the memorandum or certificate explanatory of the changes and modifications made in the text of the paper itself. To require any thing less than this of the clerk, would be leaving more to his discretion, in the mode of making up the record, than I think the legislature ever contemplated, or the courts should sanction. If such be the true exposition of the statute, then the absence of any such note of alterations or interlineations was a *circumstance for the consideration* of the jury. It was proper to direct their attention to it, and to leave them to

Hager *v.* Hager.

dispose of it as should be just; to consider how it occurred; why it was done; by whose agency; and in connection with the non-production of the original instrument, to determine what inferences should be drawn from it in regard to this clause and its frandulent insertion. It seems, however, to me to be a perfect answer to all the foregoing exceptions to the charge, that they relate to a branch of the case, to wit, the defendant's title, which the jury had no occasion to consider. It was conceded that the plaintiff's title, if well founded, took precedence of that of the defendant, as it was prior in point of time; and as the jury found in favor of the plaintiff's title, it would seem to be a matter of no importance whether the instructions of the judge on the other part of the case were correct or not.

The judge committed no error in *stating* to the jury that the partition deed between John J. and Daniel Hager had but little if any thing to do with the question whether the plaintiff had title to the premises. The plaintiff did not derive title under that deed, in whole or in part; nor had the judge so charged or intimated, in his previous remarks to the jury. But the judge did not charge even in this unqualified form; for he went on immediately afterward to say, (and this part also is embraced in the defendant's *same* exception,) " that the *main* question was whether the description in the deed to the plaintiff under the rules given to them, embraced the premises in controversy." This was the *main* question in the case between the parties; for the judge had already told them that if this were not so, " *then* they would find for the defendant."

The remaining exception to the charge, to wit, " that he was unable to see that all the calls in the plaintiff's deed could be fulfilled practically, except by running or referring to the 14 acre lot," was untenable. The judge had a right, upon evidence strongly tending to such a conclusion, to intimate or express his opinion that the plaintiff's title was best supported, by a reasonable view of the testimony; especially

when he emphatically added, (and this also is embraced in the same exception,) leaving the whole matter to their determination, " that the evidence on that subject was all before them, and if they could find otherwise they were at liberty to do so." If this constitutes legal error, it would be difficult to discover a charge upon which a new trial could not be obtained.

This case also comes here on appeal from the order of Justice HOGEBOOM, denying a new trial, on the ground of alleged irregularities in the conduct of the jury. The defendant's papers upon the motion establish substantially the following facts : That the jury were out several hours, unable to agree ; that dinner was, by the direction of the court, ordered for them ; that they went to Murphy's hotel for that purpose ; that while waiting for dinner, some of their number separated from the rest ; that a number of persons at such time had an opportunity to converse, and did converse, in the hearing of the jury, about said action, but not, so far as known, in regard to the merits thereof ; that after dining they mingled promiscuously with persons in the bar-room of the hotel, and subsequently returned to their room to deliberate upon their verdict, and thereafter rendered a verdict for the plaintiff ; that during their separation some of the jurors conversed with other persons than the jury ; that the *subject* of the suit was talked of in their presence by some of the bystanders, and, as one of the jurors in his affidavit *thinks*, a *map* was exhibited of the land in question, but no direct communication made to the deponent ; that while deliberating in their room, the constable was in the room with the jury, and frequently conversed with the jurors upon other subjects than to ask them if they had agreed upon their verdict.

The plaintiff's affidavits in opposition tend to show that the irregularities, if any, were not in any degree committed or countenanced by the plaintiff, or any one on his behalf, and that he had no knowledge thereof ; that the jurors had mostly agreed upon a verdict before their separation for din-

Hager *v.* Hager.

ner; that the constable did not converse with them in regard to the action, or the merits thereof; that the officer in charge was with the jury most if not all of the time; that they were not, so far as the deponents know or believe, in any degree influenced by any outside conversation, and did not hear or know of the same, and did not know of the exhibition of any map to or in the presence of the jurors; and that they believed the verdict to be in accordance with the law and the evidence in the case.

From this statement of the contents of the affidavits, it will be seen that there is no direct evidence of any irregularity actually prejudicing the defendant, in the cause; nor of any communication actually made to or in the presence of the jurors touching the merits of the action; unless the exhibition of a map of the land in question can be so considered. This fact rests on the affidavit of *one* of the *jurors*, who *thinks*, but does not swear, in any more positive terms, that such map was exhibited. From these facts the defendant's counsel contends, 1. That manifest irregularities were committed, as for example, in the constable conversing with the jurors; in the jurors being allowed to separate and mingle promiscuously with the bystanders, after they received the final charge of the court; and in their being present at and in a situation to hear conversation relative to the subject matter of the suit, and to see a map of the premises in question. 2. That these irregularities were of a character to have had a possible or probable influence upon the verdict; and if so, that the verdict must be set aside for that cause. 3. That the affidavits of the jurors themselves were admissible evidence to support all of these allegations, and all others, except such as imported personal misconduct on their part.

I do not deem it necessary to discuss the question whether affidavits of jurors are admissible upon questions of this description, involving the action and conduct of others towards them; because I am of opinion that the defendant's affidavits fail to make a case making it in anywise probable that

he was legally prejudiced. This court has gone so far as to say that a direct interference with the jury on the fact of the constable having them in charge, to induce them to agree upon a verdict in favor of the successful party, is not sufficient cause for setting aside their verdict. (*Baker* v. *Simmons*, 29 *Barb.* 198.) The case is equally strong as to any officious intermeddling of strangers or any other persons than the prevailing party. (*Id.* 200. *See also Taylor* v. *Everett*, 2 *How. Pr. Rep.* 23; *The People* v. *Carnal*, 1 *Park. Cr. Rep.* 256; *People* v. *Hartung*, 17 *How.* 85. *Hartung* v. *The People*, 4 *Park. Cr. Rep.* 330.)

The case is barren of any facts leading rationally to the conclusion that the defendant was prejudiced. Assume that the constable talked with them. It is affirmatively shown that it was not in regard to matters connected with this suit. Assume that they separated. It is every day's practice to allow them to do so, even in criminal cases. It may be by accident, by inadvertence, by necessity, even by design; but this of itself is no cause for disturbing the verdict. Assume that the *subject* of the suit was talked of in their presence by bystanders. What was said? That it was a lengthy suit; that it was an expensive litigation; that it was about land in Blenheim; that the land was valuable, or the reverse? Assume that a map was *exhibited*, which is by no means certain. To whom exhibited, by whom, in what way, and for what purpose? Was it accompanied with remarks · or explanations, or was it merely held up and talked about (inaudibly to the jurors) by bystanders among themselves? What map was it? One that had been given in evidence on the trial, in the hands of a surveyor or other witness? All these are questions not answered by the evidence. To set aside a verdict without any further light upon these subjects than is presented by the affidavits, would seem to be trifling with the solemnity of a verdict rendered upon oath. If remarks were made tending to prejudice the cause or the parties, the nature of them could be stated; and the very

omission to state what they were by the persons—whether jurors or otherwise—who heard them, furnishes pregnant proof that they were wholly immaterial and unprejudicial. While we should carefully guard the purity of verdicts in our courts of justice, and refuse to sustain them when tainted with any reasonable suspicion of abuse, merely idle or conjectural suggestions of prejudice or influence ought not to be listened to. From the very mode of administering justice in our courts, jurors are in almost every case necessarily more or less brought into contact with bystanders or strangers to the controversy, and we must be careful not to countenance merely fanciful or imaginary notions of prejudice to the parties, resulting therefrom.

The motion for a new trial upon exceptions should be *denied;* and the order refusing to set aside the verdict for irregularity should be *affirmed,* with $10 costs.

[ALBANY GENERAL TERM, September 1, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]