(10 Misc. Rep. 435.)

### HANRAHAN v. AYRES.

(Superior Court of Buffalo, Special Term. December, 1894.)

**1. TRIAL—SETTING ASIDE VERDICT—MISCONDUCT OF JUROR.**
    ' A verdict will be set aside for misconduct of jurors where it appears that some of them drank intoxicating liquors after the charge of court and after final retirement for deliberation.

2. SAME—WAIVER OF OBJECTIONS.

    Objections to a verdict for misconduct of the jurors are not waived where the alleged misconduct took place the night before the verdict was rendered, and the next morning the jurors were in their seats when the court was opened, and were immediately asked by the court if they had agreed, and as soon as they announced their verdict a motion to set it aside was made, as the objecting party could not have made the motion sooner.

Action by Mary M. Hanrahan against Walter S. Ayres. Defendant moves to set aside, for alleged misconduct of the jurors, a verdict rendered in favor of plaintiff. Granted.

Laughlin & Penney, for plaintiff.
Martin Carey and William F. Mackey, for defendant.

TITUS, C. J. A motion is made by the defendant, on affidavits, to set aside the verdict of the jury rendered in this case, for misconduct during their deliberation. The case was tried at this trial term of the court, occupying something over two weeks. The case was submitted to the jury, under a charge by the court; and they retired, in charge of two sworn officers, at about 7 o'clock in the evening, they having been instructed to seal their verdict in case they should agree before the court convened in the morning. On the coming in of the court in the morning, the jurors were in their seats; and, on being called and asked if they had agreed on a verdict, the foreman announced that they found a verdict in favor of the plaintiff for $5,000. Both plaintiff's and defendant's counsel were in court; and, after the jury had announced their verdict, the defendant's counsel moved for a new trial, on the ground of the misconduct of the jury, making an oral statement of the occurrences more particularly set out in the affidavits read on the hearing of the motion on a later day. The case was held, to enable the parties to prepare affidavits of the facts claimed; and it appears from such affidavits, prepared and read on the hearing, that, after the jury had retired and had their supper, they returned to their room for deliberation; that, about 8 o'clock, Wagner, one of the jurors, was taken out by officer Curtiss to a neighboring saloon, where he drank a whisky cocktail. The same juror was taken out a number of times during the night by the officer, and on one of these occasions drank another whisky cocktail. Seven other jurors went out during the night, and drank a number of glasses of beer, without the knowledge or leave of the court.

It is claimed by the jurors in their affidavits that they were not drunk, and that the drinking done by them did not affect them, nor influence their verdict in any way. It appears from the affidavit of Mr. Carey that the juror Wagner was in such condition on the morning after rendering the verdict that he was unable to remember the occurrences of the night before, and that he was then perceptibly under the influence of liquor; and from the affidavit of Mackey it appears that one of the officers, Curtiss, was intoxicated on the night in question, while in charge of the jury; and that, on the following morning, he was unable, at the time of making his affidavit, to remember the occurrences of the preceding night. It further appears

that the counsel for both plaintiff and defendant saw the officers taking the jurors to the saloon, and were in the saloon while a portion of the jury came in and called for drinks. The affidavits are voluminous, each side evidently endeavoring to show that the other is responsible in some degree for the conduct of the jury, and with a design to influence them in some way in their verdict. The facts present a rather scandalous procedure, one party distrusting and watching the other, in the apparent belief that an effort was being made to reach the jury in some unlawful manner. While the attorneys do not appear to be in any way guilty of such conduct, certainly the practice of watching a jury during their deliberations is not commendable, and this case ought not to be considered as establishing a precedent to be hereafter followed.

It is claimed by the defendant that the verdict should not be allowed to stand, in view of the fact that some of the jurors drank intoxicating liquor. Numerous authorities have been cited, from the Reports of this and other states, for and against the proposition; and, so far as I have been able, I have examined the cases with what care I could. The decisions are not uniform in the various states, and in this state the courts have not at all times followed the same rule on motions to set aside verdicts for the misconduct of the jury.

In People v. Douglass, 4 Cow. 26, two of the jurors separated from their fellows, and drank whisky, and conversed freely on the subject of the trial. Justice Woodworth, in writing the opinion of the court, says:

"The English cases are uniform that though the jury separate, if there be no further abuse, this shall not vitiate the verdict, though it would be a contempt of court if contrary to their instruction, and would be punishable as such. * * * This [drinking spirituous liquor] should not be tolerated in any shape in the jury during the progress of the trial, and we have uniformly held that it vitiated the verdict in a civil cause, even when the liquor was given to the jury by consent."

Justice Southerland said, in the same case:

"There is no difference among us that the mere fact of drinking spirituous liquor is enough to set aside the verdict. * * * When any one of the jury, in the course of the trial, drinks spirituous liquors, we will set aside the verdict on this ground alone."

In Rose v. Smith, 4 Cow. 17, which was a civil case in a justice's court, spirituous liquor was circulated among the jury while sitting in the case. In setting aside the verdict, the supreme court said: "The circulation of spirituous liquor among the jury was of itself fatal;" and, if it took place with the consent of the parties, it did not matter. "It has been thought necessary to interfere and set aside the judgment whenever it appears that spirituous liquor has circulated among the jury."

In Brant v. Fowler, 7 Cow. 562, after the judge had concluded his charge, several of the jurors requested permission to go out; and the judge told them they could go, accompanied by an officer. One of them, misunderstanding the charge of the judge, while out, separated himself from the officer, and drank about a third of a glass of brandy; and on a motion for a new trial the court say:

"We cannot allow jurors of their own head to drink spirituous liquor while engaged in the course of a cause. We are satisfied there has been no mischief, but the rule is absolute, and does not meddle with consequences. nor should exceptions be multiplied. We have set aside verdicts on error for this cause even when the parties consented that the jurors should drink."

In Oliver v. Trustees, 5 Cow. 283, the jury were told to seal their verdict and disperse. They told the constable they had agreed, and dispersed, and the next morning delivered a paper announcing that, after due deliberation, they did not agree. After dispersing, some of them were seen in a barroom, where the case was much talked of. On coming into court again, they were directed to retire, and reconsider the case, which they did, and returned a verdict for the defendant. The court, in setting it aside, say:

"We think the circumstances of this case in themselves amount to positive abuse. They evidence the want of respect in the jury to the obligation imposed upon them by their situation, which cannot be sanctioned consistently with the rights of parties."

In People v. Ransom, 7 Wend. 417, error was claimed in the clerk not putting one of the ballots into the box, by mistake, until the other names had all been drawn out. Justice Southerland, in discussing what irregularity is sufficient to set aside the verdict of the jury, after reviewing the authorities, comes to the conclusion that any mere informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jurors themselves, will not be sufficient ground for setting aside a verdict, either in a civil or criminal case, where the court is satisfied that the party complaining has not or could not have sustained any injury from it, and that the rule in this respect is the same in civil and criminal cases.

In Stevens v. People, 19 N. Y. 549, where the defendant was on trial for murder, the jury were, by consent, allowed to separate during the trial. It was held by the court that it was not an error, unless the defendant was in some manner prejudiced.

The case of People v. Schad, 58 Hun, 571, 12 N. Y. Supp. 695, arose on a motion to set aside the verdict of a jury for misconduct, under subdivision 3 of section 465 of the Code of Criminal Procedure, which provides that when the jury have separated, without leave of the court, after retiring to deliberate upon their verdict, or "have been guilty of any misconduct by which a fair and due consideration of the case has been prevented," the court has power to set "aside the verdict, when the substantial rights of the defendant have been prejudiced." The defendant in this case was convicted of a felony. After the jury had retired to deliberate on their verdict, the officer having them in charge, without leave of the court, took them to dinner at an hotel. Before dinner one of the jurors separated from his fellows, and drank brandy at the bar, and another went to the water closet, in the basement of the hotel, and did not accompany the jury to the courthouse, arriving after the others. The general term, in setting aside the verdict, said:

"We have no hesitation in saying that this motion discloses misconduct on the part of the jury, which vitiated the verdict, and for which a new trial should be granted. * * * In the absence of evidence that either of the jurors, while separated from his fellows, conversed with any person on the

subject of the trial, we should no doubt support the trial court, in the exercise of its discretion, not to grant a new trial for the sole cause of the separation of the jury. But the conceded fact that, during the time devoted to the deliberations of the jury, one of their number twice indulged in the use of intoxicating liquor, we regard as fatal to the verdict. * * * In respect to the use of intoxicating liquor, it is impossible for the court to measure or estimate the effect of alcoholic stimulant, which varies with the susceptibility of the person by whom it is taken. It is enough that its well-known tendency is to produce an abnormal elevation, * * * and a corresponding disturbance, in a greater or less degree, of the reasoning powers. It is for this reason that the use of intoxicating liquor by jurors while deliberating on their verdict is not permitted, except as a necessary medicine; and its unauthorized use at such time by one of the jurors has usually been regarded in this country as furnishing ground for setting aside a verdict in case of a felony."

If the case at bar were a felony, I should have no hesitation in saying that the authority above quoted would be conclusive upon me in determining this motion; but it is claimed that it arose under a section of the Criminal Code, and has no application to a civil action. It will be observed that the last clause of subdivision 3 of this section of the Code does not specify what misconduct is sufficient to warrant the interference of the court, but "any misconduct by which a fair and due consideration of the case has been prevented" will authorize the court to interfere. From an examination of the authorities, it has been quite uniformly held that drinking intoxicating liquor during the deliberation of a jury is sufficient to set aside a verdict. The enactment of this section of the Code into a statute has furnished no new grounds for the exercise of judicial discretion, but is rather a codification of the causes which have operated for a long time on the courts of this state in setting aside verdicts for the misconduct of jurors. It is not clear why a cause which would be sufficient to vitiate a verdict in a criminal case would not be sufficient to warrant the interference of a court in a civil case. In fact, it has been repeatedly said by judges, in discussing the causes for which a court might properly set aside a verdict, that the rule is the same in civil as in criminal cases; and instances are referred to in which courts have set aside verdicts in civil cases, for the sole reason that one or more of the jurors have drank intoxicating liquor during the trial, as well as after they had retired for deliberation. Brant v. Fowler, 7 Cow. 562; Oliver v. Trustees, 5 Cow. 283; People v. Douglass, 4 Cow. 26.

A clear distinction is made by the courts between drinking during the progress of the trial, while the jury are at liberty to separate and go where they please, and drinking after the case has been finally submitted to them for their deliberation. Such was the case of Wilson v. Abrahams, reported in 1 Hill, 207. The misconduct complained of was during the progress of the trial, and not after the jury had retired, in charge of an officer, to deliberate. In that case the court, in commenting upon the case of Brant v. Fowler, says:

"The jurors were not, as in this case, at liberty to go where they pleased, nor had they the right to take either food or drink without the permission of the court. * * * The judge had delivered the charge, and the trial as to everything but the verdict was at an end before the jurors were permitted to retire."

In the case of People v. Pscherhofer, 64 Hun, 483, 19 N. Y. Supp. 483, the court said:

"The cases in which verdicts have been set aside for misconduct of jurors in the use of liquors are those in which the liquor has been drunk, without leave of the court or medical prescription, after the case has been submitted to the jury for their decision."

So, in the case of Hager v. Hager, reported in 38 Barb. 92, the jury were out several hours, unable to agree, and dinner was ordered them by the court; and, while waiting for dinner, some of the jurors separated from the rest, and mingled promiscuously with persons in the barroom, and heard persons converse about the action. Some of the jurors conversed with other persons than the jury, and with the constable, while they were deliberating in their room, and were with them and conversed with them on other subjects than to ask them if they had agreed upon their verdict; and the court held that it did not appear that the jury was in any way influenced in their verdict by what had been said in their presence, and sustained the special term in refusing to set aside the verdict for misconduct of the jury; but in that case the question of the effect of drinking spirituous liquor by the jury while in the course of their deliberations was not before the court, nor was it discussed by the learned judge who wrote the opinion. To the same effect is the case of Smith v. Thompson, 1 Cow. 221, where two of the jurors eluded the constable, and left the room, and remained away until morning. It was held that, while it was clearly irregular to separate from their fellows, yet it did not affect the merits of the case between the parties; that whether the verdict is to be set aside depends upon circumstances, and the real justice of the case, but, if there is a probability of abuse, the court, in its opinion, says: "We then notice it, but here is none." The same rule was held in Ex parte Hill, 3 Cow. 355, the court holding that it was the settled doctrine that the mere separation of a jury is not ground for avoiding the verdict; nor is it sufficient ground to avoid the verdict that the constable has interfered with the deliberation of the jury in favor of one of the parties. Baker v. Simmons, 29 Barb. 198; Taylor v. Everett, 2 How. Pr. 23; People v. Hartung, 17 How. Pr. 85.

It thus appears that, while the courts will not now set aside a verdict because a juror has taken a drink of liquor at his own expense during the progress of the trial, and while he is at liberty, while not in court, to go where he pleases, if he does not drink to excess, so as to impair his power of deliberation or influence his judgment, a verdict will not be set aside, either in a civil or a criminal case; but even then, if his conduct is such as to show an utter disregard of his duty, and no just sense of the responsibility of his station, the verdict should be set aside. A proper respect for the due administration of the law in the trial of causes imposes the duty upon the court to act promptly in setting aside verdicts, when there is just ground for believing the condition of the jury was such that a fair and intelligent deliberation could not be had, and a just conclusion arrived at, by reason of overindulgence in any intoxicant. The practice of the courts in cases of the misconduct of a juror in

drinking during the progress of the trial, or while deliberating upon their verdict, is not entirely uniform in the different states. In California it has been held, and such seems to be the rule, that drinking intoxicating liquor during the deliberation of the jury is sufficient cause for avoiding the verdict. People v. Lee Chuck (Cal.) 20 Pac. 719. But in State v. Baldy, 17 Iowa, 39, and Ryan v. Harrow, 27 Iowa, 494, a different rule was held. In Massachusetts, in some cases, it has been held that drinking spirituous liquor during the progress of the trial does not necessarily avoid the verdict. In Indiana, in Carter v. Glass Co., 85 Ind. 180, it was held that, where the juror left his fellows after being charged by the court, it would not of itself avoid the verdict. So, in some of the other states, a like rule has been followed, and some of the elementary writers also lay down the rule that drinking beer or liquor will not be sufficient to set aside a verdict, unless intoxication or inability to discharge his duty follows.

While the early rule of the courts in this state, which held that drinking liquor during the progress of the trial would avoid the verdict in either a civil or criminal case, has been somewhat relaxed by the more recent decisions, yet it now seems to be well settled that drinking spirituous liquor by jurors, without leave of the court, while deliberating on their verdict, is a sufficient ground for setting it aside, whether the party obtaining the verdict is responsible for such misconduct or not; and I have been unable to find any case in this state in which the verdict was sustained where it clearly appeared that the jury had been guilty of drinking intoxicating liquor after the charge of the court and the final retirement of the jury for deliberation. It seems to me that this is the better rule: A party is entitled to the clear and deliberate judgment of the jury, not acting under the excitement of intoxicating liquor or the stupor following from its use. It is well known that jurors uniformly swear that they have not been influenced by its use, and that they were able to give to the case that same calm and dispassionate consideration which ordinarily characterizes their business transactions when entirely free from the effects of stimulants; but I think common observation rebuts this conclusion, notwithstanding they may be entirely conscientious in making it.

The counsel for the plaintiff claims that, at all events, the defendant has waived his right to object to the misconduct of the jury, and that it is now too late to ask that the verdict be set aside. I am aware of the rule that a party knowing of the misconduct or irregularity of the jury must act promptly in bringing the matter to the attention of the court if he intends to take advantage of it; but I think the facts in this case show that the defendant acted sufficiently promptly, and that he has not waived the right to have the matter investigated by the court, and the wrong righted. The jury came into court in the morning, and were in their seats when the court was opened, at 10 o'clock. Their names were first called, and the usual question asked them; and, when they had announced their verdict, the first proceeding in court was a motion to set it aside. No time elapsed after the court convened and the jury an-

nounced their verdict before this motion was made. The only way it could have been done more promptly was to interrupt the court in its orderly proceeding by telling what had occurred, as no opportunity was given counsel to make a motion until after the verdict was rendered. The grossness of the offense, as it appears from the affidavits in this case, should not, it seems to me, be readily condoned, or the party held to a too strict waiver of his right to bring the matter to the attention of the court. I do not think the defendant has waived his right to make this motion. From what has been said, it follows that the motion to set aside the verdict of the jury for misconduct must be granted.