### PATRICK v. VICTOR KNITTING MILLS CO.

(Supreme Court, Appellate Division, Third Department.   January 11, 1899.)

JURY—MISCONDUCT—INTOXICANTS.
    A jury having retired, the jurors stopped at a bar en route for supper.
    and nearly all drank intoxicants.   During the evening a quart bottle of
    mixed whisky and wine was brought into the jury room, and almost all
    partook.   Later in the night another bottle was produced from which
    several drank, and several drank brandy at the bar before breakfast.  *Held*
    to be such misconduct as to vitiate the verdict, and this though the jury
    had stood 9 for no cause of action, and 11 to 1 before they began drinking
    from the quart bottle.

Appeal from special term, Albany county.

Action by James Patrick against the Victor Knitting Mills Com-
pany.   There was a judgment for defendant, and from an order deny-
ing a motion to set aside the verdict plaintiff appeals.   Reversed.

The appeal in this case is from an order of the special term denying a mo-
tion made by the plaintiff to set aside a verdict in favor of the defendant, for
the alleged misconduct of the members of the jury in using intoxicating
liquors after the cause was finally submitted to them.   It is not claimed that
either party knew of or was in any way connected with such misconduct.
It was shown that after the jury retired, at about 5 o'clock in the afternoon
of December 17, 1897, a ballot was taken with the following result: Nine for
no cause of action, two f r a verdict in favor of the plaintiff, and one blank.
The members of the jury were then, pursuant to the direction of the judge,
taken by the officer in charge to an hotel to procure supper.   On their way
they passed through a barroom, and, at the invitation of such officer, almost
all of them drank intoxicating liquors at the bar.   After supper they were
taken to their room, and, after some ballots, the vote stood: One for a ver-
dict in favor of the plaintiff, and eleven for no cause of action.   At that time,
about 11 o'clock at night, the members of the jury sent out for and procured

a quart bottle of mixed whisky and wine, which was partaken of by most of them. So far there is no conflict in the affidavits read on the motion. Two of the jurors also stated in their affidavits that another bottle of whisky was afterwards, at about 1 o'clock at night, brought into the jury room and drunk by members of the jury. One of said affiants also stated that on the next morning, before breakfast, he drank brandy at the bar of the hotel, and saw several of the other jurors drink liquor at the same time and place. This last statement does not appear to be denied; but affidavits on the part of the defendant are to the effect that, instead of a second bottle of whisky being brought into the jury room, one of the jurors had a pocket flask of whisky, of which several of the jurors partook. The affidavits read on the part of the defendant show that, when treated by the officer, the juror Wemple drank liquor or whisky; he afterwards drank out of the bottle twice. Finch drank whisky at the bar, and out of the bottle two or three times. Van Wormer drank nothing at the bar, but drank out of the bottle two or three times. Vanderzee drank whisky or lager at the bar, once out of the bottle, and out of the flask he thinks once. The juryman Thrall, in his affidavit, states that he drank at the bar on the evening of December 17th, once out of the bottle brought in at 11 o'clock, once out of the other bottle, and at the bar on the morning of the 18th, before breakfast. All the jurors but one state in their affidavits that they were not at all affected by the liquor they drank. At the opening of the court on December 18th, the jury came in and reported that they were unable to agree. They were again sent out, and at about 11:30 a. m. agreed upon a verdict of no cause of action.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

Walter H. Wertime (John T. Cook, of counsel), for appellant.
Henry A. Strong (E. Countryman, of counsel), for respondent.

PUTNAM, J.   Under the doctrine stated in Rose v. Smith, 4 Cow. 17, People v. Douglass, Id. 28, and Brant v. Fowler, 7 Cow. 562, the verdict rendered by the jury in this case could not, under the circumstances, be allowed to stand. In those cases it was held that the mere fact that one of the jurors drank intoxicating liquors during the progress of the trial was of itself sufficient cause to set aside the verdict. In Wilson v. Abrahams, 1 Hill, 207, the correctness of this doctrine was denied. I shall hereafter have occasion to consider this case. In People v. Schad, 58 Hun, 571, 12 N. Y. Supp. 695, the general term of the Fifth department held that after the jury had retired to deliberate upon their verdict the fact that one of them was allowed to drink spirituous liquors was a sufficient ground to set aside the verdict. In Hanrahan v. Ayres, 10 Misc. Rep. 435, 31 N. Y. Supp. 458, the special term of the superior court of Buffalo also reached the conclusion that the drinking of spirituous liquors by members of the jury without leave of the court, when deliberating upon a verdict, is a sufficient ground for setting it aside. In other states the same doctrine has been held. State v. Baldy, 17 Iowa, 39; Ryan v. Harrow, 27 Iowa, 494; People v. Gray, 61 Cal. 164; People v. Lee Chuck, 78 Cal. 317–330, 20 Pac. 719; Davis v. State, 35 Ind. 496; Leighton v. Sargent, 31 N. H. 119. Many other authorities to the same effect might be cited. In some of the authorities it has been held that the act of a member of a jury in using alcoholic beverages at any time during a trial warranted the setting aside of a verdict; in others, that the misconduct of a juror or jurors in using liquors after they had re-

tired to deliberate was a sufficient cause to invalidate the verdict. A distinction, however, has, I think properly, been made between the act of a juror in using liquors during the progress of a trial, at a time when he is allowed to separate from his fellow jurymen, and a similar act after the jury has retired to deliberate upon a verdict. In People v. Pscherhofer, 64 Hun, 483, 19 N. Y. Supp. 483, it appeared that a juror had taken wine medicinally during the trial and before the final submission of the case. This was held not a ground for disturbing the verdict, and Dwight, C. J., used the following language, adverting to the distinction between the misconduct of a juror using liquor during the progress of the trial and after the final submission of the case:

"The cases in which verdicts have been set aside for misconduct of jurors in the use of liquor are those in which the liquor has been drunk—without leave of the court, or medical prescription—after the case has been submitted to the jury for their decision. People v. Schad, 58 Hun, 571, 12 N. Y. Supp. 695, and the cases cited. We are not aware that a charge of misconduct of a juror such as to vitiate a verdict has ever been based upon the use of liquor during the trial."

This distinction is alluded to in State v. Bruce, 48 Iowa, 530–537, as follows:

"There is a wide distinction between the duty of a juror during the adjournment of court pending the trial and his duty after the case is submitted to him for his determination. * * * If, during the adjournment of the court, they do no act which impairs the mind or clouds the understanding when again called upon to hear the evidence or arguments of counsel, we think it cannot be said that there was misconduct to the prejudice of any one. When the cause has been finally submitted, the parties have the right to the calm, deliberate, and sober consideration of the jury, and any conduct which tends to impair this right may well be said to be prejudicial. An examination of the numerous cases cited in argument has led us to the conclusion that when the indulgence in intoxicating drinks occurs during the adjournment, and before the cause is finally submitted to the jury, the better rule is, in the absence of a showing of prejudice, that the verdict should stand, and we think there is no good reason for making any distinction between civil and criminal causes in the application of the rule."

See, also, People v. Lee Chuck (Cal.) 20 Pac. 719; Grottkau v. State, 70 Wis. 469, 36 N. W. 31; Hanrahan v. Ayres, 10 Misc. Rep. 441, 31 N. Y. Supp. 458.

In Wilson v. Abrahams, 1 Hill, 207, the verdict was sought to be set aside because one of the jurors had drunk liquor while the trial was in progress, and before the evidence was closed. To understand the opinion of Bronson, J., in that case we must bear in mind the facts that appeared therein. It was shown that during the adjournment for dinner on the second day of the trial, the jurors being allowed to separate, and before the evidence had been closed, one of the jurors went to a tavern and drank about half a gill of brandy. There was no allegation that he was rendered less capable by his act for the proper discharge of his duties. He afterwards, during the trial, sat as one of the jurors, apparently unaffected by the liquor he had taken. This was the misconduct for which the verdict was sought to be set aside, and the remarks of Bronson, J., were made in reference to that state of facts. It was held, under the circumstances shown in that case, that the verdict should not be overruled. The facts in the

case under consideration are very different.    The misconduct of the members of the jury was while they were deliberating on their verdict.    They must be deemed to have known that their act was wrongful, as well as the act of the officer in charge in allowing them to have spirituous liquors; and hence their misconduct was willful.    It is shown that members of the jury drank intoxicating liquors three or four times during their deliberations, some of them perhaps five times, if such members drank at the bar before breakfast on the morning of the 18th of December.    It might well be held, under the facts disclosed in the case of Wilson v. Abrahams, that the slight misconduct of one juror should not invalidate the verdict, while, under the circumstances appearing in this case, that the verdict should be set aside.    The question here presented is whether a verdict shall be allowed to stand when it appears that the members of the jury during their deliberations indulged in what might be called a carousal.    In Wilson v. Abrahams, supra, Justice Bronson, after discussing the cases, as to whether the misconduct of one or more of the members of a jury should or should not cause a verdict to be set aside, uses the following language:

"When * * * there is reason to suspect that he drank so much, at his own expense, as to unfit him for the proper discharge of his duty, or where he has so grossly misbehaved himself in any other respect as to show that he had no just sense of the responsibility of his station, the verdict ought not to stand.    But every irregularity which would subject the jury to censure, whether in drinking spirituous liquor, separating from his fellows, or the like, should not overturn the verdict, unless there be some reason to suspect that the irregularity may have had an influence on the final result."

Under the doctrine thus stated by the learned judge, the verdict rendered in this case should not be suffered to stand.    Not only did members of the jury grossly and willfully misbehave themselves, but, considering the amount of intoxicating liquor that some of them drank, there is good reason "to suspect" that such members were rendered unfit for the proper discharge of their duties; that, although not intoxicated, they could not take the amount of liquor they were shown to have drunk without being more or less affected thereby, and without a disturbance, to some extent, of their reasoning powers.    In People v. Schad, supra, where the defendant was the moving party, it was said:

"The defendant on trial has the right to the exercise of the cool, clear, and undisturbed judgment of every member of the jury, and, whether it be the intellect of one or more of the twelve which has been clouded or unbalanced by the use of alcoholic stimulants, the effect, in either case, must be equally fatal to the verdict rendered."

Every case where a motion to set aside a verdict of a jury for misconduct of its members is made should be determined on the facts shown therein.    Assuming that the decisions in Wilson v. Abrahams, and kindred cases, where on such motions verdicts were sustained were correct, I think the moving papers in this case show such an extreme case of misconduct on the part of the members of the jury that the verdict should be set aside.    To apply the doctrine stated in Wilson v. Abrahams, supra, the members of the jury were guilty of such misbehavior as to show that they had no just sense of the responsibility of their station; and also there is reason to

344

suspect that some of them drank so much as to unfit them for the proper discharge of their duties. The decision in Wilson v. Abrahams was that, for the slight misconduct of one juror occurring before the jury had commenced its deliberations, the verdict could not be overturned. But the court in that case did not hold that for such an extreme degree of misconduct as was shown in this case, by nearly every member of the jury, after they had commenced their deliberations, a verdict would not be set aside. In this case the gross misbehavior referred to in the opinion of Bronson, J., in the case cited, as a ground for vacating a verdict, was shown. The fact that, before the members of the jury drank anything, nine agreed upon the verdict afterwards rendered, and that before the quart bottle of liquor was introduced into the jury room, eleven had agreed upon a like verdict, does not lead to a different conclusion. Jurors are liable to change their votes while in the jury room. The first ballot, showing nine in favor of no cause of action, and the subsequent ballot, in which eleven voted in the same way, indicate the views of the jurors when those ballots were taken. Had there been a full, free, and intelligent discussion of the case by the jurors, with minds unclouded by intoxicating stimulants, one or more of those who at 11 o'clock agreed upon the verdict afterwards rendered, might have changed their views. The twelfth man, who for a long time was in favor of a verdict for the plaintiff, might have convinced others that his views were correct, or he might have retained his views. The plaintiff was entitled to the clear, cool, and undisturbed judgment of every member of the jury, during the whole of the time of their deliberation. There is not only ground to suspect that he did not have such judgment, but a strong probability that members of the jury must have been affected by the amount of liquor taken. Many of the cases referred to are criminal actions. But the authorities hold, and I see no reason to doubt, that the same principle applies to civil as well as to criminal cases. In either case, a party is entitled to a jury whose members are unaffected with liquor,—to the clear, undisturbed judgment of each juror. In either case, a party should be relieved by the court in case of extreme misbehavior on the part of the jurors. I have examined the greater part of the decisions in other states cited by the learned counsel for the respondent bearing on the question as to when the misconduct of a juror or jurors in using alcoholic stimulants during the progress of a trial should be a ground for setting aside a verdict. In many of those authorities the misconduct alleged and considered occurred during the progress of the trial, at a time when the jury were allowed to separate, and hence, for reasons above suggested, such authorities are not applicable. In some of the cases cited members of the jury used liquor at the trial with the consent of the parties, or with the knowledge of the moving party, who, having the opportunity to do so, failed to call the attention of the court to such misconduct until after the rendition of the verdict. In the greater part of the authorities cited, the misconduct alleged was slight as compared with the misbehavior of the jury in the case under consideration, and

where, under the doctrine stated in Wilson v. Abrahams, supra, the court might have no cause to suspect that injury had been suffered in consequence of such misconduct.    I do not deem it profitable to attempt a discussion or review of the authorities so cited. Some of them tend to support the views urged on the part of the defendant, but generally they do not hold that in such an extreme case of misbehavior as this, by nearly every member of a jury, while they were deliberating after the charge of the court, the verdict should be allowed to stand.    Without expressing an opinion whether or not the unauthorized use of intoxicating liquor by one or more members of a jury while deliberating upon a verdict is, of itself in all cases such an act of misconduct as to warrant the setting aside of a verdict, in my judgment, the use of such liquors by members of a jury to the extent and under the circumstances as shown in this case is such great and extreme misconduct as calls upon the court to grant a new trial, not only under the doctrines stated in the opinion of Bronson, J., in Wilson v. Abrahams, supra, but also under principles established in many other well-considered cases.

The order should be reversed, with $10 costs and disbursements, and the motion granted, without costs.    All concur.